ONSITE/MOLOKAI LIMITED PART-NERSHIP, an Oregon Partnership; Onsite Energy, Inc., an Oregon Corporation, Plaintiff,

v.

GENERAL ELECTRIC, a New York Corporation; Basler Electric, an Illinois Corporation; Harold Miura, Inc., a Hawaii Corporation, and DOES 1 through 30 inclusive, Defendants.

Civ. No. 91–00272 HMF.

United States District Court,
D. Hawaii.

June 4, 1992.

. . Robert G. Frame, Mary A. Cox, Alcantara & Frame, Honolulu, HI, Stanley L. Gibson, G. Geoffrey Robb, Derby Cook Quinby & Tweedt, San Francisco, CA, for Onsite/Molokai Ltd. Partnership, Onsite Energy, Inc., a Oregon Corporation.

Richard E. Stifel, Goodsill Anderson Quinn & Stifel, Honolulu, HI, for General Elec. Co., a New York Corp.

Glenn J. Stanford, Gary W.K. Au Young, Honolulu, HI, for Basler Elec., an Illinois Corp. ·

Bruce M. Ito, Libkuman Ventura Ayabe Chong & Nishimoto, Honolulu, HI, for Harold Miura, Inc., a Hawaii Corp.

*ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT GENERAL ELECTRIC'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND COMPLAINT*

FONG, District Judge.

### INTRODUCTION

. On May 11, 1992, the court held· a hearing on a· motion for summary judgment filed by defendant General Electric ("GE") on March 18, 1992. Plaintiff Onsite/Molokai Limited Partnership and Onsite Energy, Inc. (collectively "Onsite") served its opposition on all defendants, but apparently, did not file a copy with the court. On April 30, 1992, GE filed a reply to this opposition. On May 4, 1992, plaintiff filed a copy of the opposition with the court.

Onsite also filed a motion to shorten time to hear their motion to amend complaint so that it too could be heard on May 11, 1992. The motion to shorten time was granted and the motion to amend complaint was filed on May 6, 1992. GE filed a memorandum in opposition to this motion on May 6, 1992.

### BACKGROUND

In 1984, Molokai Electric Company ("Molokai Electric") purchased a generator and electrical component parts and systems from GE and contracted for various express war-

ranties. Molokai Electric later purchased two extended warranties. In 1988, Onsite, an Oregon corporation, purchased the power plant from Molokai Electric. The generator was included in this purchase. On December 11, 1988, the generator failed. Onsite brought suit against GE and others on theories of strict liability, breach of warranty, and negligence. It now seeks to recover $273,675.64 in damages for repairs, related expenses and lost revenues.

GE brought the instant motion for summary judgment as to Onsite's claims and the cross-claims of defendant Miura and Basler on two grounds: (1) the strict liability and negligence claims are barred by the economic loss doctrine; and (2) the breach of warranty claims should be dismissed because there were no express warranties in existence at the time of the generator's failure.

### SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The movant must be able to show "the absence of a material and triable issue of fact," *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987), although it need not necessarily advance affidavits or similar materials to negate the existence of an issue on which the non-moving party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. *But cf., id.,* 477 U.S. at 328, 106 S.Ct. at 2555–56 (White, J., concurring).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support his legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on his pleadings, nor can he simply assert that he will be able to discredit the movant's evidence at trial. *See T.W. Elec.,* 809 F.2d at 630. Similarly, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Moreover, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Architectual Building Products, Inc., Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), *citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (emphasis in the original).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987), *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec.,* 809 F.2d at 631. Also, inferences from the facts must be drawn in the light most favorable to the non-moving party. *Id.* Inferences may be drawn both from underlying facts that are not in dispute, as well as from disputed facts which the

judge is required to resolve in favor of the non-moving party. *Id.*

## DISCUSSION

### I. *THE ECONOMIC LOSS DOCTRINE.*

■ Onsite seeks damages to cover repairs and lost revenues under theories of negligence and strict products liability (collectively "products liability theory"). In the instant motion, GE argues that such claims are barred under the economic loss doctrine. Under this doctrine, courts have drawn a distinction between what is covered under the law of warranty and what is covered under the law of torts. A plaintiff is generally not allowed to sue under products liability theory (tort) for the type of damages normally contemplated to fall within the area of warranty law (contract).

### A. *Choice of Law.*

■ Precisely where the dividing line between tort and contract lies, however, is not entirely uniform among the various jurisdictions. It is generally accepted that where a product causes a personal injury, or injures other property, these damages may be recovered under products liability theory. On the other hand, where a product's failure causes purely economic loss, such as lost revenue or lost business opportunities, such losses are not recoverable.

■ The issue upon which these various doctrines divide is whether injury caused by a product *to the product itself* is recoverable under a theory of tort liability. Because this case is in federal court on the basis of diversity jurisdiction, this court is bound to apply the choice of law rules of the state of Hawaii. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under these rules, the court is bound to apply the substantive tort/products liability law of Hawaii because it is alleged that a product manufactured by GE caused injury in the state of Hawaii. Unfortunately, the Hawaii courts have not yet made their position known as to which sub-doctrine of the economic loss doctrine they intend to apply.

Plaintiff argues that the Hawaii Supreme Court would most likely adopt California law.

Plaintiff then claims that, under California law, injury to the product itself is recoverable under products liability theory. Defendants, on the other hand, argue that the Hawaii Supreme Court would most likely adopt the reasoning set forth by the United States Supreme Court in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) and hold that injury to the product itself is not recoverable under products liability theory. As a secondary position, defendants argue that the California approach would, in fact, yield the same result.

This court has examined both the *East River* case cited by defendants and the line of California and Ninth Circuit cases cited by plaintiff and has come to the following conclusions: First, it is unclear exactly what the law of California is with respect to injury to the product itself. Second, the reasoning which underlies the *East River* case is so convincing and well grounded in the relevant policy considerations that this court believes that the Hawaii Supreme Court would adopt the *East River* approach over the murky body of California law cited by plaintiff.

The *East River* court, after going through all of the various doctrines, held that

a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself.

"The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff in having an accident causing physical injury. The distinction rests, rather on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products." *Seely v. White Motor Co.*, 63 Cal.2d [9], at 18, 45 Cal.Rptr. [17], at 23, 403 P.2d [145], at 151 [(1965)]. When a products injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong.

*East River,* 476 U.S. at 871, 106 S.Ct. at 2302.

Because this court believes that the Supreme Court of Hawaii would adopt the *East*

*River* approach, the law of that case will be applied to the case at bar.

### B. *Application of the Economic Loss Doctrine.*

Onsite argues that (1) the economic loss doctrine does not apply because Molokai Electric was not sufficiently sophisticated to justify its application under *Kaiser Steel Corp. v. Westinghouse Electric Corp.,* 55 Cal. App.3d 737, 746, 127 Cal.Rptr. 838, 845 (Cal. Ct.App.1976), and (2) even if the doctrine were to apply, it would not exclude all the damages because some of the claimed amount is for damages to property other than the product itself.

#### 1. *Inapplicability of* Kaiser Steel.

Onsite relies on *Kaiser Steel* for the proposition that its recovery should not be limited by the economic loss doctrine. This position in unpersuasive, however, because plaintiffs misinterpret the holding in *Kaiser Steel. Kaiser Steel* and its progeny did not deal with the economic loss doctrine—which is a limitation of the *scope* of a products liability action—rather, they dealt with the *applicability* of products liability doctrines in certain circumstances. Under *Kaiser Steel,* no action in strict products liability would be available as between parties who:

(1) deal in a commercial setting; (2) from positions of relatively equal economic strength; (3) bargain the specifications of the product; and (4) negotiate concerning the risk of loss from defects in it.

*Kaiser Steel,* 127 Cal.Rptr. at 845.

In this case, GE is not arguing that the products liability doctrine does not apply under the *Kaiser Steel* principle. Rather GE is arguing that the *type of damages* requested by Onsite (repairs/lost profits) are not recoverable under products liability theory because of the limitations of the economic loss doctrine as set forth in *East River,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) and *Seely v. White Motor Co.,* 45 Cal.Rptr. 17, 403 P.2d 145 (1965). As a result, *Kaiser Steel* is simply not applicable.

#### 2. *Definition of "the Product".*

■■ Under the *East River* approach, it is necessary to define exactly what is meant by "the product" so that the damage caused to the product can be excluded under the economic loss doctrine. Plaintiff contends that the generator and the brushless exciter were two separate products. If this position is accepted then, to the extent that the brushless exciter malfunctioned causing damage to the generator, such damage would be recoverable under the *East River* doctrine. GE, on the other hand, argues that the brushless exciter was, in fact, an integral part of the generator, and not separate and distinct. Accordingly, all damage to the generator would be unrecoverable economic loss.

This appears to be a disputed issue of material fact. The court notes that there are concerns associated with an overly narrow definition of a "product." As was explained in *East River Steamship,* 476 U.S. at 867, 106 S.Ct. at 2299:

Since all but the very simplest of machines have component parts, [a contrary] holding would require a finding of 'property damage' in virtually every case where a product damages itself. Such a holding would eliminate the distinction between warranty and strict products liability.

The court, nevertheless, finds that Onsite has presented a reasonable argument to the effect that it might be appropriate, in this case, to treat the brushless exciter and the generator as two separate products. In support of its argument, Onsite notes that the brushless exciter came with a separate instruction manual.

Because the court cannot, at this point, make the factual determination as to whether the brushless exciter and the generator were one "product," the court will *not* grant summary judgment to the effect that all damages claimed under plaintiff's tort and strict liability theories are barred by the doctrine of economic loss. Nonetheless, the court will make a more limited ruling with respect to (1) the claim for lost revenues; and (2) the portion of the repair cost which can be attributed to the repair of the brushless exciter itself.

■■ With respect to the claim for lost revenues, it is clear that such would be barred under the doctrine of economic loss.

Accordingly, GE's motion for summary judgment is GRANTED and the court finds that plaintiff's claim for lost revenues is not recoverable under a tort theory of liability. GE claims that Onsite has informed them, through discovery, that $68,760 of the total claim is for lost revenues. If the parties will stipulate to this allocation, the court will make a more specific ruling.

This would leave a remaining amount of $204,915.64 which is alleged to have been spent in repairing the generator. The court finds that the portion of this amount which was spent to repair the brushless exciter will not be recoverable under a tort or products liability theory. If the parties will stipulate to the allocation of expenditures between repair of the generator and repair of the brushless exciter, the court will make a more specific ruling—otherwise the question of allocation will go to the trier of fact. Again, the court notes that it has not ruled as to whether the damage to the remainder of the generator may also be considered unrecoverable economic loss—the resolution to this question will depend on the ultimate definition of the "product."

## II. BREACH OF WARRANTY.

■ GE next claims that Onsite's warranty-based claims should be dismissed because there were no express warranties in existence at the time of the generator's failure.

### A. Relevant Facts.

In 1984, after the existing generator at Molokai Electric failed, Molokai Electric purchased a replacement generator from GE. In the standard GE form quotation, the purchase was subject to certain general terms and conditions of sale, which included a limited repair and replacement warranty. The warranty was to cover failures which appear within one year following shipment of the generator. Molokai Electric accepted the GE quotation through a purchase order with certain exceptions. One of these exceptions was the following: "GE will warrant generator from defects in material and workmanship for a period of 12 months after start-up." This purchase order was signed by the GE representative and the warranty extension, thereby, became a binding term of the contract.

The generator was delivered on March 20, 1985 and it became operational by the end of June 1985. "Start-up," however, did not commence until August 1986. Onsite claims, therefore, that the initial warranties should have run until August of 1987. On April 7, 1986, however, GE wrote Molokai Electric a letter informing it that the initial warranty would expire in June of 1986. The letter offered extended warranties in one-year increments for additional consideration. Molokai Electric purchased two additional one-year extensions of the warranties commencing on the June 1986 date. Under the terms of these warranties, they covered the period from July 1, 1986 to June 30, 1988. It was the intention of both GE and Molokai Electric that these extended warranties cover this specific two year period.

On April 7, 1988, Onsite signed an agreement to purchase the power generation facility from Molokai Electric. Pursuant to this agreement, Molokai Electric transferred all warranties covering the facility. The contract was executed with the understanding that the extended warranty period expired on July 1, 1988. See Agreement for the Purchase and Sale of a Power Generation Facility in Molokai, Hawaii between Molokai Electric Company, Ltd. and Onsite Energy, Inc., Schedule D. Onsite made no effort to secure additional extended warranties from GE. The generator failed on December 11, 1988, approximately 5½ months following the stated expiration date of the second extended warranty.

### B. The Question of Reformation.

Onsite now argues that, because the original warranty between GE and Molokai Electric should have expired in August of 1987, the two extensions should have covered the period from August 1987 until August of 1989 instead of from July 1986 to June 1988. Onsite, therefore, requests that the court reform these extended warranties to cover this time period, arguing that the dates set forth on those warranties reflect a mutual mistake of fact. Because reformation was not a re-

quested remedy in the original complaint, Onsite has filed a motion for leave to amend the complaint so as to add reformation as a claim.

Even assuming all of the facts alleged by Onsite, however, the court finds reformation to be unwarranted as a matter of law. First, the court notes that, when Onsite purchased the plant from Molokai Electric, it understood that the warranty for the generator was to expire on June 30, 1988. Presumably this understanding was reflected in the overall purchase price of the facility. As a result, Onsite has suffered no injury due to the alleged miscommunication between Molokai Electric and GE and, therefore, lacks standing to sue for reformation based thereon.

Second, in the case of a mutual mistake that goes to the heart of the bargain, as is alleged here, the appropriate remedy is rescission, not reformation. Thus, to the extent that Molokai Electric mistakenly purchased a warranty covering a time period for which it already had an active warranty, the appropriate remedy would be an action by Molokai Electric against GE for rescission of the contract and a refund of the amount spent for the duplicated warranty period.

Given that the court has found reformation of the extended warranties unjustified as a matter of law, it now holds that there was no effective warranty covering the generator at the time of the failure. Accordingly, the court GRANTS GE's motion for summary judgment as to the warranty-based claims.

### III. *ONSITE'S MOTION TO AMEND COMPLAINT.*

 Onsite has moved to amend its complaint in two respects: (1) to add a claim for contract reformation as discussed above; and (2) to delete Miura as a defendant in the lawsuit. GE argues against both amendments. With respect to the contract reformation claim, GE argues that the addition of a claim of reformation would be futile and that this portion of the motion to amend should be denied. The court agrees and plaintiff's motion to amend complaint is DENIED insofar as it seeks to add a claim for reformation because, as was discussed above, doing so would be futile.

With respect to the deletion of Miura as a defendant, GE argues that such would be prejudicial to GE because GE has cross claims against Miura. The court finds this argument unpersuasive as GE can always bring a third party claim against Miura following Onsite's deletion of Miura from their complaint. Accordingly, Onsite's motion to amend complaint to delete defendant Miura is GRANTED.

IT IS SO ORDERED.