930 F.2d 389
 Prod.Liab.Rep.(CCH)P 12,811
PETROLEUM HELICOPTERS, INC., Plaintiff-Appellant,
v.
AVCO CORPORATION, et al., Defendants,
and
Allied Signal, Inc., As Successor in Interest to The Garrett
Corporation, Defendant-Appellee.
 No. 90-4279.
 United States Court of Appeals,
Fifth Circuit.
 April 17, 1991.
 
 Kenneth H. Laborde, Mary Algers, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for plaintiff-appellant.
 Howard Daigle, Jr., Phelps, Dunbar, New Orleans, La., for defendant-appellee.
 Appeal from the United States District Court for the Western District of Louisiana.
 Before THORNBERRY, JOLLY and SMITH, Circuit Judges.
 JERRY E. SMITH, Circuit Judge:
 
 
 1
 Petroleum Helicopters, Inc. (PHI), seeks recovery for the damages sustained by its helicopter when it capsized after the emergency float manufactured by the Garrett Corporation (Garrett) failed. The district court concluded that the float was a component part of the helicopter and granted summary judgment for Garrett under the doctrine set forth in East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 871, 106 S.Ct. 2295, 2302, 90 L.Ed.2d 865 (1986), which states that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself." On appeal, PHI contests the grant of summary judgment and maintains that its case is factually different from East River. Finding no error, we affirm.
 
 I.
 
 2
 In August 1979, Air Cruisers Company (Air Cruisers), a division of Garrett, manufactured an emergency flotation device for helicopters bearing the serial number (S/N) 0074. The float was manufactured according to the specifications of Aerospatiale Helicopters Corporation (AHC) and was sold and shipped to AHC in Grand Prairie, Texas. AHC then assembled the float, along with other components supplied by AHC, into an integrated flotation system that it had designed and tested for its AS-350 model helicopters.[1] Float S/N 0074 was fitted, as original equipment, onto one of its AS-350 model helicopters bearing FAA registration number N3598A.
 
 
 3
 On February 29, 1980, AHC sold this particular helicopter, with all its original equipment, to PHI. Under the terms of the written contract for the purchase of the helicopter, AHC agreed to provide a limited warranty to PHI for the helicopter and its optional equipment[2] that it, as "the helicopter manufacturer," had manufactured. While section 5 of the warranty explicitly states that AHC makes no warranty for various parts and equipment that it did not manufacture, it also says that AHC will assign any warranty rights that it receives on these items to PHI "to the extent [it] is able to do so." Although PHI and AHC have agreed to a compromise on this issue, it does not appear that an assignment regarding flotation S/N 0074 was ever made.[3]
 
 
 4
 During the rest of that year, AHC also sold PHI a number of similar AS-350 model helicopters with identical flotational devices. From 1980 through 1983, PHI routinely switched the floats from their original aircraft to other AS-350 helicopters in its fleet. During this time, float S/N 0074 was removed and reinstalled at least four times. On two of these occasions, PHI sent the float to International Aviation Services, Inc. (IASI), for repair, inspection, and overhaul.
 
 
 5
 In July 1983, PHI fitted float S/N 0074 to a different AS-350 helicopter bearing FAA number N5774X. On July 26, 1983, the helicopter lost engine power over the Gulf of Mexico, requiring the pilot to make an emergency landing. The pilot inflated the popout float and landed on the water. Two minutes later, the inflation device on the float malfunctioned, and the aircraft capsized.[4] In addition to the damage to the float, the capsizing resulted in damage to the aircraft, which was later repaired at a cost of $175,209.07.
 
 II.
 
 6
 In July 1984, PHI sued several defendants for property damage to its helicopter. The original defendants were AHC and Societe Nationale Industrielle Aerospatiale--the helicopter manufacturer; Avco Corporation--the engine manufacturer; Parker Hanaifin--the manufacturer of one of the engine components; and Garrett--the manufacturer of some emergency flotation system components.
 
 
 7
 In 1988, prior to the close of discovery, Garrett moved for summary judgment, maintaining that PHI's tort claims for property damages were barred under the doctrine established by the Supreme Court in East River. The court denied the motion because it believed that disputed issues of fact existed concerning the nature of the bargain between PHI and AHC. Discovery continued for the next three years, and by July 1989, PHI had compromised and dismissed its claims--including its breach of warranty claims--against every defendant except Garrett.
 
 
 8
 At that time, PHI amended its complaint and added IASI as a new defendant. PHI now alleged that the damage to the helicopter was caused solely by the failure of the right emergency float and not necessarily by the engine or the helicopter itself. According to the amended complaint, IASI was strictly liable for defects in the float after it left its control. PHI thus dropped its products liability and warranty claims against Garrett but now alleged that Garrett was negligent in instructing IASI regarding the repairs.
 
 
 9
 In December 1989, PHI amended its complaint again, leaving Garrett as the only defendant. PHI dismissed all claims against IASI and dismissed its negligent instruction claim against Garrett, replacing it with PHI's original products and warranty claims against Garrett. The second amended complaint alleged that the emergency float was unreasonably dangerous in normal use, that the accident was caused by Garrett's negligence, that Garrett breached express or implied warranties to PHI, and that Garrett was guilty of negligent misrepresentation in its repair manual. The complaint also alleged damages in the amount equal to the cost of repairing the helicopter.
 
 
 10
 After the close of discovery, Garrett renewed its motion for summary judgment. In its motion, Garrett argued that PHI's products liability and negligence claims were barred under the doctrine set forth in East River. Garrett further maintained that it was entitled to judgment on PHI's warranty claims. The district court reconsidered its earlier decision and granted summary judgment in favor of Garrett on the products claims but denied the motion with respect to PHI's remaining claims.
 
 
 11
 PHI then asked the district court to certify the issue for interlocutory appeal pursuant to 28 U.S.C. Sec. 1292(b). When the court denied PHI's request, PHI voluntarily dismissed its remaining warranty and negligent misrepresentation claims and now appeals the adverse final judgment.
 
 III.
 
 12
 In reviewing summary judgment, we apply the same test as did the district court. Chiari v. City of League City, 920 F.2d 311, 314 (5th Cir.1991); Puckett v. Rufenacht, Bromagen & Hertz, Inc., 903 F.2d 1014, 1015-16 (5th Cir.1990). To obtain summary judgment, the moving party must demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). Moreover, the plaintiff is required to "designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting rule 56(c)).
 
 IV.
 
 13
 PHI claims that the district court erred in granting summary judgment for defendants on its strict products liability and negligent design claims against Garrett. We disagree.
 
 
 14
 In East River, 476 U.S. at 876, 106 S.Ct. at 2304, the Court held that "whether stated in negligence or strict liability, no products-liability claim lies in admiralty when the only injury claimed is economic loss."[5] East River involved a strict products liability and negligence suit by charterers of oil transporting tankers against the manufacturer of the tankers' turbine engines, which were damaged as a result of alleged design defects in a small engine part. The Court stated that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." Id. at 871, 106 S.Ct. at 2302. It reasoned that when the only damage is economic loss to the product itself, the purchaser has simply lost the benefit of its contractual bargain and should be limited to its contractual warranty remedies. Id. at 872-76, 106 S.Ct. at 2302-04.[6]
 
 
 15
 We interpreted East River in Shipco 2295, Inc. v. Avondale Shipyards, Inc., 825 F.2d 925 (5th Cir.1987), cert. denied, 485 U.S. 1007, 108 S.Ct. 1472, 99 L.Ed.2d 701 (1988). Shipco involved a plaintiff chartering company's maritime tort claims against the manufacturer of the vessels and the manufacturer of the vessels' steering system for repair costs to the vessels, which were damaged as a result of a design defect of a capscrew within the steering mechanism. While the vessels were designed and constructed by the manufacturer, it had purchased the steering system from another company, then assembled and installed it in the vessels. Id. at 926.
 
 
 16
 In affirming a summary judgment in favor of the vessels' manufacturer, the court in Shipco held that the East River rule applies when the action is for damage to the product itself and not for damage to "other property." Id. at 929. Although the plaintiff argued that the damage to the steering system was "other property," different from the mechanism's defective capscrew, the court disagreed. It held that the distinction between the product itself and "other property" depends upon the object of the parties' contract or bargain and not upon the various technical differences between "the individual components that make up the vessels." Id. at 928. Accordingly, the court determined that the contract was for vessels and their components,[7] that the warranty provisions of the contract between the two parties should govern the dispute, and that a separate products liability suit by the plaintiff against the steering system's manufacturer was unnecessary and unduly burdensome.[8]
 
 
 17
 Two other decisions explicate further the reasoning of East River in this circuit. Relying upon Shipco, the court in ERA Helicopters v. Bell Helicopter Textron, Inc., 696 F.Supp. 1096 (E.D.La.1987), granted summary judgment in favor of an engine component's manufacturer in a suit brought by the owner of a helicopter that had crashed because of the part's failure. The court felt that the warranty, provided to the helicopter owner by the engine's prime manufacturer, was sufficient to deal with liability for the engine's failure and that further efforts to make the part's manufacturer liable were unnecessary. Id. at 1098.
 
 
 18
 And in Nicor Supply Ships Assocs. v. General Motors Corp., 876 F.2d 501 (5th Cir.1989), we dealt with a case factually distinguishable from the present one and further defined the concept of "other property." Nicor involved economic damage to seismic equipment that the ship's charterer had brought on board the vessel a year after the ship's owners had received the vessel from its manufacturer. Since the equipment had not been originally bargained for under the contract for the vessel, the court held that it constituted "other property" for which recovery in tort was allowed. Id. at 505-06.
 
 
 19
 In the present case, PHI maintains that the district court erroneously decided that the flotation device under consideration was a component part of the helicopter and then wrongly utilized East River to grant Garrett's summary judgment motion. Relying upon our interpretation of East River in Nicor and in Shipco, PHI argues that the damage to its helicopter should be considered damage to "other property" different from that bargained for in the contract for float S/N 0074 between PHI and AHC. Such a contract, PHI contends, did not include the damaged helicopter.
 
 
 20
 PHI further avers that this contract did not include a warranty provision and consequently did not allow it to recoup its losses from the damaged plane. Hence, PHI believes that East River mandates that it should be allowed to pursue its strict products liability and negligent design and manufacture claims against Garrett.
 
 
 21
 Garrett, however, argues that PHI misconstrues the factual basis of its contract with AHC for an integrated helicopter product that includes floats and overlooks its warranty and non-warranty options to recoup its losses from the accident. While agreeing with PHI's understanding of Shipco, Garrett maintains that PHI agreed to a contract for an integrated helicopter and flotational device that included a warranty and that PHI should not be able to interchange the flotational devices on helicopters and then expect to utilize an additional non-warranty remedy. Indeed, Garrett contends that the helicopter was part of the bargain between PHI and AHC, akin to the integrated product in East River, and was not like the "other product" damaged in the accident in Nicor. Moreover, Garrett believes that the contract between PHI and AHC contains an adequate warranty. Garrett thus argues that tort remedies should not be made available to PHI.
 
 
 22
 PHI fails to show that the court erred in granting Garrett's summary judgment motion. Although PHI claims that the issue of "other property" damage represents a material factual dispute, the district court was correct in deciding this question as a matter of law under a Shipco-type analysis.[9] Thus, there were no material factual disputes left to be resolved, and Garrett is entitled to judgment as a matter of law. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The floats installed on these AS-350 helicopters were designed by AHC for only that model, were certified by the FAA for only that model, and were fitted and sold to PHI as original equipment on only that model
 
 
 [2]
 The integrated flotation system was optional equipment that in this instance the buyer, PHI, specifically had requested. The term "original equipment" merely means that the float was included in the integrated helicopter product for which PHI bargained with AHC
 
 
 [3]
 The record indicates that Air Cruisers provided AHC with a limited 12-18-month warranty on the floats that it purchased. The warranty appears to provide that the sole remedy for the buyer is repair or replacement of the damaged device at Air Cruisers's plant. It also describes specific procedures that AHC must follow in order to receive such a remedy. In addition to this express warranty, PHI believes that Garrett provided it with an implied warranty when it explained in its overhaul manual that the "compartmental floats provide the assurance, should a puncture occur, that sufficient buoyancy is retained to prevent the helicopter from capsizing."
 
 
 [4]
 The pilot was not in the helicopter at the time
 
 
 [5]
 It is undisputed that maritime law governs PHI's claims under 28 U.S.C. Sec. 1333, even though PHI asserts that diversity jurisdiction under 28 U.S.C. Sec. 1332 may also apply
 
 
 [6]
 The Court in East River pointed out that in the commercial setting in the maritime industry, parties are free to bargain for the terms of their contract, including warranties and risk allocation. 476 U.S. at 872-75, 106 S.Ct. at 2302-04. The Court also indicated that even if the parties exclude warranty remedies in their contract, they are still bound by the terms of their contract for purely economic loss and cannot seek additional remedies in tort:
 Contract law, and the law of warranty in particular, is well suited to commercial controversies of the sort involved in this case because the parties may set the terms of their own agreements. The manufacturer can restrict its liability, within limits, by disclaiming warranties or limiting remedies.... In exchange, the purchaser pays less for the product.... Since a commercial situation generally does not involve large disparities in bargaining power, ... we see no reason to intrude into the parties' allocation of the risk.
 Id. at 872-73, 106 S.Ct. at 2303 (citations omitted).
 
 
 [7]
 The court noted that
 ' "[s]ince all but the very simplest of machines have component parts, [a contrary] holding would require a finding of 'property damage' in virtually every case where a product damages itself. Such a holding would eliminate the distinction between warranty and strict products liability." '
 Shipco, 825 F.2d at 928 (quoting East River, 476 U.S. at 867, 106 S.Ct. at 2300 (quoting Northern Power & Eng'g Corp. v. Caterpillar Tractor Co., 623 P.2d 324, 330 (Alaska 1981))).
 
 
 [8]
 The court in Shipco further noted,
 We see no rational reason to give the buyer greater rights to recover economic losses for a defect in the product because the component is designed, constructed, or furnished by someone other than the final manufacturer. The buyer ordinarily has no interest in how or where the manufacturer obtains individual components. The buyer is usually interested in the quality of the finished product and is content to let the manufacturer decide whether to do all the work or delegate part of it to others.
 ....
 ... The critical fact that Shipco bargained for a finished vessel remains unchanged.
 Id. at 929.
 
 
 [9]
 The question of whether the float constitutes "other property" is a legal question and not, as PHI indicates, a factual determination similar to the determination of whether a person should be considered a "crew member" or a "longshoreman" under the Jones Act. Shipco establishes that the phrase "other property" is construed by looking to the nature of the contract between the parties, 825 F.2d at 929, and such a determination hence rests upon a contractual interpretation, i.e., a legal analysis, and not upon a separate factual determination