**EXXON SHIPPING COMPANY and Exxon Company, U.S.A. (a Division of Exxon Corporation), Plaintiffs,**

v.

**PACIFIC RESOURCES, INC., Hawaiian Independent Refinery, Inc., PRI Marine, Inc., PRI International, Inc., and Sofec, Inc., Defendants,**

v.

**BRIDON FIBRES AND PLASTICS, LTD., Griffin Woodhouse, Ltd., and Werth Engineering, Inc.\*, Third–Party Defendants.**

Civ. No. 90–00271 HMF.

United States District Court,
D. Hawaii.

Oct. 22, 1993.

---

\* Note: Werth Engineering Dismissed May 23, 1991.

Leonard F. Alcantara, Robert Frame, and Mary Cox, Alcantara & Frame, and Judy S. Givens, Fukunaga, Matayoshi, Hershey & Kuriyama, Honolulu, HI, for plaintiffs.

George Playdon, Janine Kimball, Reinwald, O'Connor, Marrack, Hoskins & Playdon, Honolulu, HI, and Theodore Dimitry, Vinson & Elkins, Houston, TX, for Pacific Resources, Inc., Hawaiian Independent Refinery, Inc., PRI Marine, Inc., and PRI International, Inc.

Michael D. Tom and Randall K. Schmitt, McCorriston, Miho, Miller & Mukai, Honolulu, HI, for Sofec, Inc.

David W. Proudfoot and Nenad Krek, Case & Lynch, Honolulu, HI, for Bridon Fibres and Plastics, Inc.

John R. Lacy, Goodsill, Anderson, Quinn & Stifel, Honolulu, HI, for Griffin Woodhouse, Ltd.

*ORDER GRANTING SOFEC'S, BRIDON FIBRES AND PLASTICS', AND GRIFFIN WOODHOUSE'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT*

FONG, District Judge.

## INTRODUCTION

Defendant Sofec, Inc., third-party defendant Bridon Fibres and Plastics, Ltd. ("Bridon Fibres"), and third-party defendant Griffin Woodhouse, Ltd. each move for partial summary judgment as to claims for damage to the single point mooring of third-party plaintiffs Pacific Resources, Inc., Hawaiian Independent Refinery, Inc., PRI Marine, Inc., PRI International, Inc. (collectively "HIRI defendants").

## BACKGROUND

This case arose out of the March 1989 breakaway and subsequent grounding of the Exxon Houston ship from its mooring at Barbers Point on the island of Oahu. The ship had been moored to an offshore mooring terminal, a single point mooring ("SPM") owned and operated by the HIRI defendants. It broke away on March 2, 1989 and subsequently grounded upon a reef, resulting in severe damage to the ship, oil spillage, and damage to the SPM.

In April 1990, Exxon filed a complaint against HIRI and Sofec, the firm that designed, built, and installed the SPM under contract with HIRI, alleging that the chafing chain, a part of the SPM, had parted, causing the ship to break away from its berth. In June 1990, HIRI filed a third-party complaint against Griffin Woodhouse, Bridon Fibres and Plastics, and Werth Engineering and Marine,[1] manufacturers and sellers of the chafe chain.

The court bifurcated the trial of this matter: at a Phase I trial, the court would resolve liability and the issue of Exxon's superseding negligence for damages arising after 5:28 p.m. on March 2, 1989 (13 minutes after the breakaway), and at a Phase II trial, the court would resolve liability preceding 5:28 p.m. and all damage issues. On May 20, 1993, the court entered its findings of fact and conclusions of law for the Phase I trial, finding Exxon to be solely at fault for the grounding of the ship. What remains for the court to resolve are two claims for damages: Exxon's claim for the cost of clean-up of the crude oil spill allegedly caused by the breakaway and HIRI's claim for damages caused to their SPM.

The instant motions for summary judgment address HIRI's claim for damages caused to the SPM which it owned and operated. The SPM is a composite of several components, including the SPM buoy, the mooring assembly (which includes the chafe chain that broke on March 2, 1989), the cargo/product hoses, the riser manifold, and the SPM anchor chains. Its three principal components are the buoy, the chafe chain, and the hoses. Sofec contracted to manufacture, assemble, and install the SPM.[2] Griffin Woodhouse manufactured the chafe chains, and Bridon Fibres sold two chains, one to Sofec and the other to HIRI directly. Although the second was intended as a spare, the two were commingled. Pursuant to the contract, HIRI purchased the floating hoses separately. The hoses were assembled and installed with the rest of the CALM SPM by Kiewit Pacific Co., under its contract with Sofec.

The movants for summary judgment seek a ruling that, as a matter of law, HIRI is precluded from recovering damages for injury to the SPM, including the chafe chain, mooring assembly, riser manifold, and cargo/product hoses.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when

> for all fabrication, construction and installation labor, and manage all construction activities as required to convert the [HIRI] Existing Facility at its Marine Terminal to a CALM type of SPM system, and connect the CALM unit to the PLEM.
>
> Sofec–HIRI Agreement, Section 2.2.

---

1. In May 1991, a stipulation and order was entered dismissing all claims by and against Werth without prejudice.

2. Under the terms of the contract, Sofec was to perform the mechanical designs, engineering supervision, purchase and deliver all consumable and non-consumable material and contract

... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgments as a matter of law.

The party moving for summary judgment bears the initial burden of "identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc., v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). The movant need not advance affidavits or similar materials to negate the existence of an issue on which the opposing party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

Once the moving party meets its burden, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial" in order to defeat the motion. Fed.R.Civ.P. 56(e); *see also T.W. Elec. Serv., Inc.,* 809 F.2d at 630. The opposing party may not simply rest on its pleadings, nor may it simply assert that it will discredit the movant's evidence at trial. *Id.* "If the factual context makes the [opposing] party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal. Arch. Bldg. Prods. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

The standard for summary judgment reflects the same standard governing directed verdicts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). When there is a genuine issue of material fact, "the judge must assume the truth of the evidence set forth by the [opposing] party with respect to that fact." *T.W. Elec. Serv., Inc.,* 809 F.2d at 631. Inferences from the facts must be drawn in the light most favorable to the nonmoving party. *Id.*

## DISCUSSION

### A. *East River and the Economic Loss Doctrine.*

HIRI is seeking damages under products liability theory (negligence and strict products liability). The movants assert that such damages are barred under the economic loss doctrine. Under the economic loss doctrine, courts have drawn a distinction between what is covered under the law of warranty and what is covered under the law of torts. A plaintiff is generally not allowed to sue under product liability theory (tort) for the type of damages normally contemplated to fall within the area of warranty law (contract).

Precisely where the dividing line between tort and contract lies is not entirely uniform among the various jurisdictions. It is generally accepted that where a product causes a personal injury or injures other property, these damages are recoverable under products liability theory (negligence or strict products liability). On the other hand, where a product's failure causes a purely economic loss, such as lost revenue or lost business opportunities, such losses are not recoverable.

The issue upon which these various doctrines divide is whether injury caused by a product *to the product itself* is recoverable under a products liability theory in tort. In *East River S.S. Corp. v. Transamerica Delaval,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), the Supreme Court held that injury to the product itself is not recoverable under product liability theory. 476 U.S. at 871, 106 S.Ct. at 2302. The Court, sitting in admiralty jurisdiction, held that vessel operators were precluded from recovering the costs of repair and lost income caused by defective turbines installed on their vessels. *Id.* "A manufacturer in a commercial environment," declared the Court, "has no duty under either negligence or strict products liability theory to prevent a product from injuring itself." *Id.* (footnote and citation omitted). The Court reasoned that

'[t]he distinction that the law has drawn between tort recovery for physical injuries

and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products.' [citation omitted] When a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong.

*Id.*

*East River* is the controlling authority when this court sits in admiralty. *Aris Helicopters, Ltd. v. Allison Gas Turbine,* 932 F.2d 825, 827 (9th Cir.1991). Moreover, the *East River* doctrine is directly applicable to the facts of this case. Movants assert that the doctrine precludes a recovery of damages by HIRI for injury to the SPM because, they allege, one part of the SPM—the chafe chain—injured other parts of the SPM. This, they assert, amounts to the product injuring itself. Movants point out that HIRI itself alleges that the failure of the chafe chain caused damage to the SPM and mooring assembly, and acknowledges that the allegedly defective chafe chain, oil hoses, and SPM buoy are all components of the same product—the SPM.

### B. *Defining the "Product".*

Under the *East River* approach, it is necessary to define exactly what is meant by the "product" so that the damage caused to the product can be excluded under the economic loss doctrine. In *East River,* the Supreme Court found that turbine components that had been supplied as an "integrated package" were to be treated as a single product. 476 U.S. at 867, 106 S.Ct. at 2300. The Court gave little guidance as to the substance of the inquiry under other circumstances. It did caution, however, against defining the product in overly narrow terms:

'Since all but the very simplest of machines have component parts, [a contrary] holding

would require a finding of 'property damage' in virtually every case where a product damages itself. Such a holding would eliminate the distinction between warranty and strict products liability.'

*Id.* (citation omitted) (alteration in original).

The crux of the issue in this case is whether the SPM constitutes a single, integrated product or whether instead, it is merely a conglomerate of various individual components, each of which is a distinct product. In opposing summary judgment, HIRI and Exxon argue that there is a question of fact as to whether the chafe chain is, as movants argue, merely one part of a single product (the SPM) or whether it is a defective product separate from the other components which make up the SPM. HIRI's position is, of course, the latter, as *East River* will preclude recovery in strict liability only as to damage to the chafe chain itself, not damage to the other parts of the SPM.

■ In determining what constitutes the product, the court looks first to the parties' contract. Only when this inquiry proves insufficient does the court look to extrinsic evidence. This court has previously held that whether various components constitute a single, integrated product or separate and distinct products may require a factual determination.[3] *See Onsite/Molokai Ltd. Partnership v. General Electric,* Civil No. 91–00272 HMF, 838 F.Supp. 1390 (June 4, 1992). As movants point out, the Fifth Circuit has held that the determination is a question of law:

The question of whether the float constitutes 'other property' is a legal question and not, as PHI indicates, a factual determination.... [T]he phrase "other property" is construed by looking at the contract between the parties, [citation omitted] and such a determination hence rests upon a contractual interpretation, ie., a legal analysis, and not upon a separate factual determination.

*Petroleum Helicopters, Inc. v. AVCO Corp.,* 930 F.2d 389, 393 n. 9 (5th Cir.1991). The Fifth Circuit has treated the issue of what

---

**3.** The court held that whether a "brushless exciter" was an integrated part of a generator or "other property" was a question of fact precluding summary judgment. The court was presented with extrinsic evidence that the products were two separate products, most notably the fact that the brushless exciter came with its own instruction manual.

constitutes "the product" as one of contractual interpretation, and its holding is consistent with the general principle that, in admiralty, questions of contract interpretation are questions of law. *See, e.g., Dow. Chemical Co. v. M/V Roberta Tabor,* 815 F.2d 1037, 1042 (5th Cir.1987). This court does not disagree. In some circumstances, though, as in *Onsite/Molokai,* the court is not presented with sufficient evidence of the parties' contract and may be forced to look to extrinsic facts.

The court begins, however, with an inquiry into the parties' contract. In a line of admiralty cases interpreting the *East River* doctrine, the Fifth Circuit has analyzed the question of what constitutes the "product" as a question of law. In *Shipco 2295, Inc. v. Avondale Shipyards, Inc.,* the court enunciated the "object of the bargain" standard. 825 F.2d 925, 928 (5th Cir.1987), *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1472, 99 L.Ed.2d 701 (1988). In *Shipco,* the buyer had purchased vessels from the shipbuilder, who, in turn, had purchased the steering system from a third party manufacturer. 825 F.2d at 925–26. After an alleged malfunction of the steering system damaged other parts of the vessels, the court considered whether the vessel or the steering system was the "product." *Id.* at 928. The court enunciated the following standard:

> In attempting to identify the product, our analysis leads us to ask what is the object of the contract or the bargain that governs the rights of the parties?

*Id.*

The court found that the buyer had purchased completed vessels from the shipbuilder, not separate components. *Id.* The court held that the same rational applied to the buyer's claim against the third party manufacturer, remarking that

> [w]e see no rational reason to give the buyer greater rights to recover economic losses for a defect in the product because the component is designed, constructed, or furnished by someone other than the final manufacturer. The buyer ordinarily has no interest in how or where the manufacturer obtains individual components. The buyer is usually interested in the quality of the finished product and is content to let

the manufacturer decide whether to do all the work or delegate part of it to others. *Id.* at 929. The court thus held that the steering system was merely a component of the vessel notwithstanding that it had been provided by a third party.

In subsequent cases, the Fifth Circuit has explicated the "object of the bargain" test further. In *Nicor Supply Ships Assocs. v. General Motors Corp.,* an allegedly defective engine caused a fire which destroyed a vessel. 876 F.2d 501, 502 (5th Cir.1989). Because Nicor had purchased the completed vessel, held the court, the engine was an integral component of the vessel, and Nicor could not recover damages in tort against the engine vendor. 876 F.2d at 502. Recovery in tort was available, though, for damage to seismic equipment that had been brought on board by a third party who time-chartered the vessel from Nicor as such equipment was not the object of the bargain between Nicor and the shipbuilder. *Id.* at 506.

In *Petroleum Helicopters, Inc. v. Avco Corp.,* a helicopter crashed when a float allegedly malfunctioned during an emergency water landing. 930 F.2d at 390. The float had been manufactured by a third party, but was included in the helicopter when sold by the helicopter manufacturer to Petroleum Helicopters. *Id.* Petroleum Helicopters (PHI) had switched the float from the helicopter in which it had been originally included to the helicopter which had crashed. *Id.* PHI argued that the contract under which the float had been purchased did not include the damaged helicopter, or, alternatively, that a question of fact was presented which precluded summary judgment. *Id.* at 391. The Fifth Circuit affirmed the lower court's granting of summary judgment, holding that the question of whether the float constituted "other property" was a question of law, rather than one of fact. *Id.* at 393 n. 9.

In *McDermott, Inc. v. Clyde Iron,* 979 F.2d 1068, 1070 (5th Cir.1992), *cert. granted,* —— U.S. ——, 113 S.Ct. 3033, 125 L.Ed.2d 721 (1993), plaintiff had purchased a crane from a crane manufacturer for use on an offshore oil platform. The manufacturer had purchased the crane hook from a third party and assembled the crane. 979 F.2d at

1070. The crane hook failed during use, damaging the crane and a deck belonging to plaintiff's oil platform, and was alleged to be defective. *Id.* The court held that plaintiff could recover in tort only for damage to the deck, not to the crane. *Id.* at 1078. It was irrelevant, the court remarked, that plaintiff also owned the deck; the hook was a component of the crane. *Id.* ·

As refined in these cases, the analysis in the "object of the bargain" test is more than a mechanical or formalistic determination of whether the injuring and injured components were sold under the umbrella of the same contract. In *Petroleum Helicopters,* they plainly were not. Instead, the court focused on the fact that the objects of the parties' bargain were the entire helicopter. *Petroleum Helicopters* suggests that spare and replacement parts may therefore be part of the "object of the bargain," regardless of whether or not they are purchased under the same contract.

■ The analysis is this a fluid one, and does not require that the entire product be supplied under a single, umbrella contract. Even a multi-party purchase arrangement, where the purchaser acts as its own general contractor in a series of coordinated transactions with several vendors, does not upset the analysis.[4] *See, e.g., American Home Assur. Co. v. Major Tool & Mach., Inc.,* 767 F.2d 446, 448 (8th Cir.1985) (entire turbine was "single product fabricated under a series of subcontracts"); *see also ERA Helicopters, Inc. v. Bell Helicopter Textron Inc.,* 696 F.Supp. 1096, 1098 (E.D.La.1987) (object of

bargain was entire helicopter, even though plaintiff had acquired fuel governors and fuel control units directly and not as part of contract for helicopter). In such cases, the object of the bargain is the acquisition of the completed product, even though this object is realized via a series of coordinated transactions with several sellers.

■ Applying the "object of the bargain" test in the case at bar,[5] the court finds that HIRI had as the object of its contract with Sofec the conversion of the preexisting mooring system into a complete, integrated SPM. The *East River* doctrine therefore precludes recovery for damages to the entire SPM—the chafe chain, the buoy, and the hoses. *East River* precludes recovery for damage to the chafe chain under any circumstances. The fact that the chafe chain may have been the spare purchased directly by HIRI rather than the one purchased by Sofec makes no difference. This is consistent with *Petroleum Helicopters.* An integrated product may have any number of components replaced with spare parts in the ordinary course of events. To hold that these parts are "other property" would lead to absurd results. Although the hoses were specifically excluded from the contract and purchased separately by HIRI, they were intended for integration with the rest of the SPM. As in *ERA Helicopters* and *American Home Assurance,* the court finds that HIRI purchased the hoses as part of a coordinated series of transactions leading to the acquisition of a completed SPM.

4. The law is less settled with regard to the situation where a significant new component is acquired later and added to an existing product. Some courts have held that tort recovery is precluded in such a case. *See McConnell v. Caterpillar Tractor Co.,* 646 F.Supp. 1520, 1525–26 (D.N.J.1986) (tort recovery precluded where new crankshaft damaged engine). In this court's view, the better approach is to permit tort recovery under such circumstances. *See Mays Towing Co., Inc. v. Universal Machinery Co., Inc.,* 755 F.Supp. 830, 833 (S.D.Ill.1990) (tort recovery allowed where new engine damaged vessel)

5. As an alternative to the "object of the bargain" analysis, Bridon Fibres suggests that the court could apply the "integral function" test, which some courts have applied outside of the admiral-

ty context. *See, e.g., Wisconsin Power & Light Co. v. Westinghouse Elec. Corp.,* 645 F.Supp. 1129 (W.D.Wis.1986), *aff'd,* 830 F.2d 1405 (7th Cir.1987). Under this test, the court considers whether the injuring component performed an integral function within the product and whether the product could function at all without the product.

In the view of this court, the "object of the bargain" test, as applied by the Fifth Circuit, is convincingly reasoned and well grounded in relevant policy considerations. An alternative approach, such as that suggested, will ordinarily be unnecessary. If, however, the court is presented with insufficient evidence of the parties' contract, as in *Onsite/Molokai, supra,* such an alternative inquiry may be useful.

## CONCLUSION

The *East River* doctrine, as refined by the Fifth Circuit in the line of cases described above, makes it clear that HIRI is precluded from recovering for damage to its SPM. HIRI had as the "object of its bargain" the acquisition of the completed SPM, and the SPM in its entirety is properly viewed as the "product." As a matter of law, HIRI is precluded from recovering in tort for damage to the SPM.

For the reasons given, the Court GRANTS the motions for partial summary judgment.

IT IS SO ORDERED.