

1998 Decisions

1-15-1998

# Sea Land Ser Inc v. Gen Elec Co

Precedential or Non-Precedential:

Docket 96-5331

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Sea Land Ser Inc v. Gen Elec Co" (1998). *1998 Decisions.* Paper 11.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/11

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 15, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 96-5331 & 97-5287

SEA-LAND SERVICE, INC.

v.

GENERAL ELECTRIC COMPANY

      Sea-Land Service, Inc.
      ("Sea-Land"),

      Appellant.

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 95-cv-01378)

Argued December 12, 1997

Before: GREENBERG, ROTH, and SEITZ, Circuit Judges

(Opinion Filed: January 15, 1998)

      Jeffrey L. Reiner, Esquire (Argued)
      Geralyn A. Boccher, Esquire
      Reiner & Koles, P.C.
      30 Park Place, Suite 301
      Morristown, NJ 07960
       Attorneys for Appellant

Nicholas S. Brindisi, Esquire
1200 Route 46 West
Clifton, NJ 07013

Edward C. DeVivo, Esquire (Argued)
Edward Griffith, Esquire
Raymond L. Mariani, Esquire
Dombroff & Gilmore
40 Broad Street
Suite 2000
New York, NY 10004-2382
 Attorneys for Appellee

OPINION OF THE COURT

ROTH, Circuit Judge:

Appellant Sea-Land Service, Inc. (Sea-Land) has appealed the district court's grant of summary judgment in favor of General Electric Company (GE) on Sea-Land's tort claims in admiralty for economic loss. The district court dismissed the case based on the holding of the Supreme Court in East River Steamship Corp. v. Transamerica Delaval, Inc., 106 S.Ct. 2295 (1986), that under maritime law no claim lies for either negligence or strict products liability when a commercial party alleges injury only to a product itself, resulting in purely economic loss. Id. at 2302.

In this appeal, we must decide 1) whether a defective part, a connecting rod, that caused damage to its surrounding engine was separate property from the engine or was merely a component of the engine; 2) whether East River bars a tort claim for post-sale duty to warn under a negligence theory when the damage is purely economic; and 3) whether East River bars a tort claim for negligent repair when the damage is purely economic. The district court held 1) that the rod was not separate property  from the engine, within the meaning of East River, and that East River precluded tort recovery for economic loss as a result of a product damaging itself; 2) that even when the injury is only economic, there is a post-sale duty-to-warn claim if a defendant-manufacturer had actual knowledge that the

2

product was defective, but that GE did not have actual knowledge of the defective part prior to Sea-Land's injury; and 3) that East River bars a tort claim for negligent repair when the damage is purely economic.

I. Facts

Sea-Land is a bareboat charterer of many vessels including the Sea-Land Enterprise. The Enterprise was constructed in 1980, and Sea-Land purchased it in 1988 from U.S. Lines. The Enterprise has two ship's service generators, a ship's service turbine generator and a ship's service diesel generator (SSDG). The Enterprise's SSDG is powered by a GE diesel engine. The diesel engine is made up of "life-cycle" parts, which a vessel operator would not expect to replace, and "renewable" parts, which must be replaced periodically. In December, 1990, Sea-Land overhauled the Enterprise's diesel engine, procuring 105 GE parts including eight GE master connecting rods. On February 26, 1991, after only 47 hours of operation by the overhauled diesel engine, it broke down, causing damage to the engine and the engine casing.

The cause of the failure, as admitted by GE, was one of the 8 connecting rods. The rod had failed because the meloniting process, used to harden it, was faulty. GE replaced all the suspect connecting rods and repaired the engine free of charge. Coincidentally, on February 8, 1991, eighteen days before the Enterprise engine failure, a similar defective connecting rod had caused a diesel engine on the United States Navy Ship Albert Meyer to break down. It later occurred that in November 1994 the Enterprise suffered a further breakdown of the SSDG. Sea-Land alleges that the 1994 engine failure was at the same location as GE's 1991 engine block repair and was due to negligent repair by GE.

Sea-Land brought suit against GE to recover for the losses caused by the two engine failures. In Count I, Sea-Land alleges that the GE connecting rod was defective and claims the profits it lost while the ship was inoperable until the 1991 repairs had been completed. In Count II, Sea-Land asserts that GE negligently failed to warn Sea-Land of

3

a potentially defective connecting rod of which it had knowledge by virtue of the Albert Meyer engine failure. In Count IV, Sea-Land contends that GE breached its duty of care to Sea-Land by negligently performing the 1991 repair. As a result, Sea-Land claims the cost of repair of the engine in 1994 and the profits it lost while the ship was once again inoperable.

On April 26, 1996, the district court granted summary judgment to GE on Count I, finding that the defective GE rod was the proximate cause of injury to Sea Land but that East River barred a tort claim for lost profits. On April 17, 1997, the district court granted summary judgment to GE on all other counts, including failure to warn and negligent repair. This consolidated appeal followed.

The district court had jurisdiction over this civil case in admiralty. 28 U.S.C. S 1333. We have appellate jurisdiction from final decisions of district courts. 28 U.S.C.S 1291. Our review of a grant of summary judgment is plenary. Public Interest Research of N.J. v. Powell Duffryn Terminals, Inc., 913 F.2d 64, 71 (3d Cir. 1990).

II. Is The Product the Rod Or The Engine

We address first Sea-Land's tort claim for economic loss due to a dangerously defective part manufactured by GE. The Supreme Court in East River Steamship Corp. v. Transamerica Delaval, Inc., 106 S.Ct. 2295 (1986), held that, under admiralty law, a cause of action in tort does not lie "when a defective product, purchased in a commercial transaction malfunctions, injuring only the product itself and causing purely economic loss." Id. at 2296. Thus, a "manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." Id. at 2302. If such a product is defective, the purchaser will generally have a contract claim for breach of warranty.

In the instant case, one of the engine components, a connecting rod, was defective and damaged other parts of the engine. The question we must answer is "What is the product?" If the product, within the meaning of East River, is "a properly functioning engine," the product only caused

4

economic damage, i.e., damage to itself and lost profits. If the product is the rod, plaintiffs allege that it caused damage to "other property," i.e., to the engine. Should this be the case, then under East River a tort claim may lie and the district court's grant of summary judgment on Count I in favor of GE was erroneous.

In East River, the defendant manufactured engine turbines, installed in cargo ships. The turbine (or a component thereof) failed, causing damage to the turbine itself. Plaintiff sued in tort for recovery of the cost of repair and the lost income for the period in which the ship was out of service. The Court explained the policy considerations underlying tort and contract liability. Tort liability protects people from dangerous products. In particular, the tort theory of products liability arose from a concern that the public needed more protection from dangerous products than contracts or warranties could provide. Id. at 2299-300. The tort concern with safety is reduced, however, when a product injures only itself, id. at 2302, but does not injure persons or "other" property. The damages then are only the loss of the value of the product itself and the profits lost when it cannot be used. In such a case, because there is no duty to the public in general, it is not inequitable to limit the remedy between the parties to what they have bargained for. The parties can agree between themselves on the limits of their obligations and liabilities. They can take appropriate steps through contract provisions and/or insurance to protect themselves from foreseeable risks. Based on these policy considerations, the Court concluded that, when a product (the turbine) damages only itself, there is no tort recovery; only warranty recovery. Id. at 2303.

The present case differs from East River in that Sea-Land claims that the connecting rod did not just damage itself, it damaged other property, i.e., the diesel engine and its casing. We must determine whether this is a difference with a significance.

The Supreme Court has partially clarified the East River property/other property dichotomy in Saratoga Fishing Co. v. J.M. Martinac & Co., 117 S.Ct. 1783 (1997). In Saratoga, a primary purchaser of a ship had added to it a skiff, a

fishing net, and spare parts. The vessel, with the added equipment as a part of it, was subsequently sold to a secondary purchaser, Saratoga. An engine room fire led to the sinking of the ship, and a faulty hydraulic system was determined to be a significant cause of the sinking. Saratoga sued the manufacturer of the hydraulic system and the company that built the vessel. The issue was whether the added equipment was "other property" under East River so that Saratoga might recover damages for its destruction. The Court held that the added equipment was "other property":

> When a Manufacturer places an item in the stream of commerce by selling it to an Initial User, that item is the "product itself " under East River. Items added to the product by the Initial User are therefore "other property," and the Initial User's sale of the product to a Subsequent User does not change these characterizations.

Id. at 1786. Accord Nicor Supply Ships Assocs. v. General Motors Corp., 876 F.2d 501 (5th Cir. 1989) (holding that a ship charterer, who adds expensive seismic equipment to the ship, may recover for its loss in a fire caused by a defective engine).

The manufacturer in Saratoga had argued that"if a [subsequent purchaser] can recover for damage that a defectively manufactured product causes to property added by the [initial user], than a user might recover for damage a defective component causes the manufactured product, other than the component itself." Id. at 1788. The Court explicitly rejected this position, holding that it is not the various component parts, but the vessel itself as placed in the stream of commerce by the manufacturer and distributor that is the "product." Id. citing Shipco 2295, Inc. v. Avondale Shipyards, Inc., 825 F.2d 925, 928 (5th Cir. 1987). Citing East River, the Court concluded that, because almost all machines are made up of components, to define "other property" differently would "require a finding of `property damage' in virtually every case where a product damages itself. Such a holding would eliminate the distinction between warranty and strict products liability." 117 S.Ct. at 1788, quoting 106 S.Ct. at 2300.

In this expansion of East River, the Court drew a distinction between components added to a product by a manufacturer before the product's sale to a user, see, e.g., King v. Hilton-Davis, 855 F.2d 1047 (3d Cir. 1988) (Pennsylvania law), Shipco 2295, Inc. v. Avondale Shipyards, Inc., 825 F.2d 925 (5th Cir. 1987) (federal maritime law); Exxon Shipping Co. v. Pacific Resources, Inc., 835 F.Supp. 1195, 1201 (D. Haw. 1993) (admiralty law) (dubbing the rule in these cases, the "integrated product" rule), and those items added by a subsequent user to the manufactured product, see, e.g., Nicor Supply Ships Assocs. v. General Motors Corp., 876 F.2d 501 (5th Cir. 1989). Saratoga 117 S.Ct. at 1788.

This distinction is consistent with the "object of the bargain" test, applied by this Circuit. King v. Hilton-Davis. 855 F.2d 1047, 1051 (3d Cir. 1988). One looks to the "object of the bargain" -- the object purchased or bargained for by the plaintiff, in determining whether additions constitute "other property." Saratoga, 117 S.Ct. at 1791 (Scalia, J., dissenting) citing King, 855 F.2d at 1051 (character of plaintiff's loss may determine the nature of available remedies thus when loss is solely the benefit of the bargain, a contract remedy is sufficient), American Eagle Ins. Co. v. United Technologies Corp., 48 F.3d 142, 145 (5th Cir. 1995) (Texas law), Shipco, 825 F.2d at 928. We conclude then that every component that was the benefit of the bargain should be integrated into the product; consequently, there is no "other property." However, we distinguish from the product additional parts that are not encompassed in the original bargain but are subsequently acquired. These should not be integrated.

The question here is whether replacement parts should be integrated into the engine whole or not. In 1980, U.S. Lines, the prior owner of the Enterprise, contracted for a fully-functioning diesel engine. The commercial parties were well aware that a diesel engine contains components that are renewable, i.e., that must be replaced within the life of the engine. Thus, the benefit of U.S. Lines' bargain in 1980 was a fully-functioning engine, but with the knowledge that certain parts would have to be replaced after a certain time. In 1988, when Sea-Land purchased the ship, the product it

7

purchased was the same -- a functioning engine containing certain parts that would have to be replaced. See Saratoga, 117 S.Ct. at 1788 (holding that a subsequent purchase does not change the nature of the original product).

Sea-Land asserts, however, that upon its 1990 purchase of the connecting rod, it already owned the engine as pre-existing property, purchased in 1988. The 1990 property, the rod, caused damage to the 1988 property, the engine, and thus East River does not bar tort recovery. To support this position, Sea-Land depends on a single district court case, Lease Navajo, Inc. v. Cap Aviation, Inc., 760 F.Supp. 455, 459 (E.D. Pa. 1991) (holding that component part procured to be installed during overhaul of plaintiff's engine was separate property from plaintiff 's engine). Under Sea-Land's reading of the "benefit of the bargain" analysis, it bargained in 1988 for a properly functioning engine, and it got it. In 1990, it bargained for a properly functioning connecting rod. It didn't get it. Each bargain was a separate transaction, relating to separate property. The fact that GE happened to be the manufacturer of these two products is irrelevant. Thus, Sea-Land asserts that the district court's conclusion that the "essential object of the bargain was for a functional GE engine," April 29, 1996 opinion at 12-13, was erroneous.

Sea-Land has not convinced us, however, that there is any rational reason to deviate from the integrated product rule simply because the defective component happens to be a replacement part instead of the part originally supplied with the product. The law is clear that if a commercial party purchases all of the components at one time, regardless of who assembles them, they are integrated into one product. Saratoga, 117 S.Ct. at 1788. Since all commercial parties are aware that replacement parts will be necessary, the integrated product should encompass those replacement parts when they are installed in the engine. See Exxon, 835 F.Supp. at 1201 (rejecting the distinction between a separately purchased replacement part and the originally supplied components as irrelevant to determining whether "other property" has been damaged).

Sea-Land would, however, have us believe that the difference in timing is dispositive. Sea-Land asserts that,

even though component parts may be integrated into the end, bargained-for product, as the propeller and rudder components were integrated into the completed vessel in Shipco, 825 F.2d at 928-29, the later addition of replacement parts is a new product.

We disagree. It is a common commercial practice for the parties to a transaction to contemplate the integration of replacement parts subsequent to a purchase. In the instant case, it was expected that all the replacement parts would be eventually have to be integrated into the engine. The GE connecting rod was purchased to be installed and to become integrated with the GE engine. It is a component of that engine; it has no use to Sea-Land otherwise. Moreover, in purchasing and installing replacement parts, the parties can, as with the original purchase, negotiate the terms of the sale and of any warranties.

Sea-Land, nevertheless, interprets the "object of the bargain" test under a contract-based paradigm -- because the engine and the rod were purchased in separate contractual transactions (each with its own potential warranty), they should be treated as separate property. For purposes of contract law, and consequently a breach of warranty claim, Sea-Land is correct -- the engine and the rod are separate property, each subject to the terms of its respective contract. However, the use of separate contracts as an indicator of "other property" for purposes of invoking tort law, has been rejected by the Supreme Court. East River, 106 S.Ct. at 2300 (explaining that a single integrated machine can have many components, implicitly each procured in separate transactions); Saratoga, 117 S.Ct. at 1788 (citing Shipco with approval); see also, American Home Assur. Co. v. Major Tool & Mach., Inc., 767 F.2d 446, 448 (8th Cir. 1995) (entire turbine was "single product fabricated under a series of subcontracts"); Exxon, 835 F.Supp. at 1201 ( "spare and replacement parts may . . . be part of the `object of the bargain' regardless of whether or not they are purchased under the same contract").

Additionally, the harm that Sea-Land seeks to recover -- economic loss -- is the exact type of injury that East River explains should be the subject of a contract-based warranty suit, not a tort suit. 106 S.Ct. at 2300. Tort law is intended

9

to compensate individuals where the harm goes beyond failed expectations into personal and other property injury. Id. The timing of the purchase of the component part may be relevant, but it is not dispositive.

For all these reasons, we agree with the district court that tort law is not applicable as a basis here to recover for damage to the diesel engine. We will affirm the district court's holding that there was no damage to "other property." Id. at 2302.

III. Duty To Warn

We next address the question whether Sea-Land can make a claim in negligence against GE on the basis of a post-sale duty to warn of a defective product. In McConnell v. Caterpillar Tractor Co., 646 F.Supp. 1520 (D.N.J. 1986), a district court attempted to carve out such an exception to East River. Plaintiffs in McConnell suffered economic loss: lost profits and damage to their engine because of a defective engine crankshaft. They asserted not that defendants negligently manufactured the crankshaft but that "defendants negligently failed to warn of a known defect in the crankshaft." Id. at 1526. The district court in the instant case endorsed this exception to East River and held that there may be tort liability for post-sale failure to warn, even if the damage is only economic, when the seller has actual knowledge of the defect. The district court granted summary judgment in favor of GE because it found that GE did not have actual knowledge of the defect. We disagree with the reasoning of the district court, but we will affirm the grant of summary judgment on this claim.

The Court in East River enunciated an unconditional bar of all tort recovery for economic loss arising out of a defective product.

> We . . . hold that a manufacturer in a commercial relationship has no duty under either a negligence or strict product-liability theory to prevent a product from injuring itself.

East River, 106 S.Ct. at 2302. The Court further explained, "whether stated in negligence or strict liability, no products

10

liability claim lies in admiralty when the only injury claimed is economic loss." East River, 106 S.Ct at 2304.

As we have set out in Section II above, the reason for this rule is that the parties to such a bargain can set the terms of their expectations through negotiations, contract provisions, price adjustments, and insurance. If either party deems it advisable to require warning of a known defect in order to protect the product, that party can negotiate for such a provision or can protect against a defect through insurance. The rule in East River is directly applicable.

In rejecting this duty to warn claim, we are not, however, discounting the duty of a manufacturer to warn of a defect in order to protect the persons using the product or the public in general. We agree that we, as a society, should attempt to provide every incentive for a manufacturer with knowledge that a defective product is on the market to warn its customers. If the damage, resulting from a defect is other than mere economic loss, East River leaves intact all tort-based theories of recovery including, but not limited to, duty to warn.

Where, however, damage from a defect is only to the product itself and is only economic, there is no tort recovery. The policy of economic loss is better adjusted by contract rules than by tort principles. This conclusion is as true for strict liability and negligence cases as it is for failure to warn cases. Thus, a manufacturer may be culpable of a failure to warn, but if the damage is solely to the product itself and is solely economic, there is no tort recovery. See East River, 106 S.Ct. at 2300. Accordingly, we reject the holding in McConnell. We will, however, for the reasons stated above affirm the district court's granting of summary judgment to GE on the duty to warn claim.

IV. Negligent Repair

We address, third and finally, Sea-Land's claim for negligent repair of the damaged engine. Following failure of the connecting rod, GE repaired the damaged engine. In November 1994, the engine failed again. The failure was found to be at the location of the 1991 engine block repair.

11

Sea-Land asserts that GE negligently performed the repair and thus breached a duty of care. The damage Sea-Land suffered in 1994 was once again solely economic.

Sea-Land attempts to distinguish its negligent repair case from East River, by arguing that GE was not acting as a "manufacturer" and did not supply a "product" which injured itself. We are not persuaded. GE repaired the engine free of charge in 1991 because of the defect in the replacement connecting rod. The district court dismissed the negligent repair claim because the sole damages alleged were economic. It held that, pursuant to East River, "no products-liability claim lies in admiralty when the only injury claimed is economic loss." April 17, 1997 opinion at 13, citing East River, 106 S.Ct. at 2304. The district court found that plaintiff's remedy lay in contract, not tort. For the reasons we expressed in Sections II and III above, we agree. Despite any negligence or culpability on the part of a manufacturer, where damage is only to the product itself and where the only loss is economic, there is no basis for tort recovery. The parties must seek their remedy under contract and warranty law.

V.

For the foregoing reasons, we will affirm the judgment of the district court.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

12