TRANSCO SYNDICATE # 1, LTD and Barnacle Marine Management, Inc.

v.

BOLLINGER SHIPYARDS, INC. and Diesel Engine and Parts Co.

No. Civ.A. 96–3334.

United States District Court, E.D. Louisiana.

April 9, 1998.

John B. Peuler, McAlpine, Peuler & Cozad, New Orleans, LA, for Transco Syndicate # 1, Ltd., Plaintiff.

G. Edward Merritt, John A. Scialdone, Terriberry, Carroll & Yancey, New Orleans, LA, for Barnacle Marine Management Inc., Plaintiff.

Robert Seth Reich, Lawrence R. Plunkett, Jr., Reich, Meeks & Treadaway, Metairie, LA, for Bollinger Shipyards Inc., Defendant.

William Stevens Bordelon, Houma, LA, for Diesel Engine and Parts Company, Defendant.

W. Gerald Gaudet, Bradley Joseph Schlotterer, Voorhies & Labbe, Lafayette, LA, for Diesel Specialists, Inc., third-party Defendant.

Timothy F. Burr, Jason P. Waguespack, Galloway, Johnson, Tompkins & Burr, New Orleans, LA, for Marine Salvage Inc, third-party Defendant.

### *ORDER DENYING DIESEL SPECIALISTS, INC.'S MOTION FOR SUMMARY JUDGMENT*

VANCE, District Judge.

Before the Court is third-party defendant Diesel Specialists, Inc.'s motion for summary judgment. For the reasons that follow, the motion is DENIED.

### I. BACKGROUND

This suit arises from a fire that allegedly occurred on board the M/V LACABI on October 11, 1995. The M/V LACABI is a 78 foot tug that was owned by plaintiff Barnacle Marine Management, Inc. ("Barnacle") at the time of the accident. Barnacle and its insurer Transco Syndicate # 1, Ltd. ("Transco") allege that the fire that consumed the M/V LACABI was caused by a defective fuel hose located in one of the vessel's diesel engines.

In the spring of 1995, Barnacle contracted with Bollinger Shipyard ("Bollinger") to repair and refurbish the M/V LACABI. This refurbishment agreement required the installation of two used "Good Runner" diesel engines that Barnacle had purchased from Diesel Engine & Parts Company ("DEPCO"). DEPCO had acquired one of the two engines that it sold to Barnacle from Diesel Specialists, Inc. ("Diesel"). It is this engine that allegedly caused the M/V LACABI fire.

Plaintiffs Barnacle and Transco brought this suit against Bollinger and DEPCO alleging fault, breach of contract, and/or breach of warranty. DEPCO subsequently filed a third-party complaint against Diesel and a cross-claim demand against Bollinger alleging that the engine it purchased from Diesel was defective and that it was improperly installed by Bollinger.[1] Diesel filed this summary judgment motion asserting that a seller may not be held liable in tort for purely economic damages that a defective product causes to itself. Alternatively, Diesel argues that it cannot be held liable on these facts under Louisiana products liability law.

## II. ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when the moving party shows that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-movant party," no genuine issue exists for trial. *United States v. Robinson*, 78 F.3d 172, 174 (5th Cir.1996); *see also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To make this determination, all of the evidence must be viewed in the light most favorable to the nonmoving party. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 40 (5th Cir.1996).

### B. The Application Of *East River*

Diesel argues that it cannot be held responsible for the harm caused by the M/V LACABI fire since plaintiffs have only alleged damages for economic harm to the defective product itself. In *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986), the United States Supreme Court held that a plaintiff may not maintain a tort cause of action under admiralty law "when a defective product, purchased in a commercial transaction malfunctions, injuring only the product itself and causing purely economic loss." *Id.* at 859.

■ The *East River* Court reasoned that the loss of the value of a defective product that physically harms itself is equivalent to the loss incurred when a product fails to work properly or to work at all. *East River*, 476 U.S. at 867–68 ("Obviously, damage to a product itself has certain attributes of a products-liability claim. But the injury suffered—the failure of the product to function properly—is the essence of a warranty action."); *see Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, ——, 117 S.Ct. 1783, 1785, 138 L.Ed.2d 76 (1997). Accordingly, the Court held that a "manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." *East River*, 476 U.S. at 871. Thus, if a product malfunctions causing damage to itself, its purchaser must rely on contract law to maintain a claim for recovery.

■ *East River*, however, did not completely exclude tort claims for economic harm caused by a defective product. *See* Thomas J. Schoenbaum, Admiralty and Maritime Law § 3–11 at 120 (2d ed. 1994) ("[T]he *East River* court did not completely exclude tort product liability claims for purely economic losses."). A plaintiff may maintain a tort cause of action in admiralty when a defective product causes damage to "other property." *East River*, 476 U.S. at 867 ("In

1. Bollinger was dismissed from this lawsuit when no party filed an opposition to its motion for summary judgment.

this case, there was no damage to 'other' property."); *Saratoga Fishing*, 117 S.Ct. at 1785 ("[A]n admiralty tort plaintiff cannot recover for the physical damage the defective product causes to the 'product itself'; [sic] but the plaintiff can recover for physical damage the product causes to 'other property.' "). In order to determine what constitutes "other property," the Court must first define what is the allegedly defective "product." *See Sea–Land Service, Inc. v. General Electric Co.*, 134, F.3d 149, 152 (3d Cir.1998).

■ Diesel argues that Barnacle contracted with Bollinger for a refurbished vessel that included the installation of two "Good Runner" engines. It therefore asserts that the M/V LACABI is the product and that any damage caused to the vessel by one of its component parts—like an engine—is damage to the product itself. Barnacle, on the other hand, asserts that it did not purchase the engine at issue from Bollinger; rather it purchased two used engines directly from DEPCO, one of which caught fire damaging the vessel. DEPCO purchased this allegedly defective engine from Diesel. Barnacle concedes that it may not recover for damage incurred by the engine itself but argues that the M/V LACABI constitutes other property.

Determining what should be defined as the "product" is problematic since "all but the very simplest of machines have component parts" that can be regarded as independent products themselves. *East River*, 476 U.S. at 867. If every product were dismantled into its components, then virtually every product that damaged itself would also result in damage to "other property," and the distinction between warranty and strict products liability would be eliminated. *Saratoga Fishing*, 117 S.Ct. at 1788, *quoting East River*, 476 U.S. at 867.

Fortunately, the Supreme Court has somewhat clarified *East River's* product—other property dichotomy in *Saratoga Fishing Co. v. J.M. Martinac & Co., supra*. In *Saratoga Fishing*, the initial purchaser of a vessel added a skiff, fishing net, and other equipment to the M/V Saratoga before selling the vessel with this additional equipment to a subsequent purchaser. When a defective hydraulic system in the vessel's engine room

failed, the vessel caught fire and the ship sank. The secondary owner then filed suit against the manufacturer of the hydraulic system and the company that built the vessel. The issue presented to the Supreme Court was whether the skiff, fishing net, and other equipment added by the initial purchaser constituted "other property" under *East River*. The Court determined that they did:

> When a Manufacturer places an item in the stream of commerce by selling it to an Initial User, that item is the 'product itself' under *East River*. Items added to the product by the Initial User are therefore 'other property,' and the Initial User's sale of the product to a Subsequent User does not change these characterizations.

*Saratoga Fishing*, 117 S.Ct. at 1786. The Court therefore distinguished between components added to a product by a manufacturer before its initial sale, *see, e.g., East River*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865; *Shipco 2295, Inc. v. Avondale Shipyards, Inc.*, 825 F.2d 925 (5th Cir.1987), and items added to the product by a subsequent user, *see, e.g., Saratoga Fishing*, 117 S.Ct. at 1788; *Nicor Supply Ships Assocs. v. General Motors Corp.*, 876 F.2d 501 (5th Cir.1989). *See Sea–Land Service*, 134 F.3d at 153 (noting the Court's distinction).

This distinction is consistent with the "object of the contract test" adopted by the Fifth Circuit prior to *Saratoga Fishing*. In *Shipco 2295, Inc. v. Avondale Shipyards, Inc.*, 825 F.2d 925, 928 (5th Cir.1987), the Fifth Circuit stated that "[i]n attempting to identify the product, a court must ask 'what is the object of the contract or bargain that governs the rights of the parties?' ". *Id.* The object of the parties' contract constitutes the "product" under *East River*. *See also Petroleum Helicopters, Inc. v. Avco Corp.*, 930 F.2d 389, 392 n. 9 ("[T]he phrase 'other property' is construed by looking to the nature of the contract between the parties, and such a determination hence rests upon a contractual interpretation.").

Diesel asserts that the engine that DEPCO provided to Barnacle must be considered a component of the M/V LACABI—the product. Diesel argues that Barnacle contracted

with Bollinger to refurbish the M/V LACABI and to install the two used engines Barnacle had purchased from DEPCO. Diesel therefore concludes that the "object" of Barnacle's contract with Bollinger was a completely refurbished and operating M/V LACABI. Diesel therefore asserts that the M/V LACABI is the "product" under *East River* and that plaintiffs should not be allowed to assert claims in tort simply because the vessel's engines were manufactured separately, sold independently, and subsequently installed into the vessel. *Cf. Shipco*, 825 F.2d at 929 ("We see no rational reason to give the buyer greater rights to recover economic losses for a defect in the product because the component is designed, constructed, or furnished by someone other than the final manufacturer."). In support of this argument, Diesel relies on the Fifth Circuit's decision in *Shipco*, 825 F.2d 925, and *Petroleum Helicopters v. Avco Corp.*, 930 F.2d 389 (5th Cir.1991).

In *Shipco*, the Fifth Circuit dismissed a vessel owner's tort claims against a ship manufacturer and a steering system manufacturer for repair costs incurred due to an alleged design defect in the capscrews contained in the vessel's steering mechanism. *Shipco*, 825 F.2d at 926. The plaintiff argued that the damage to a vessel's steering system was "other property," distinct from a defective capscrew. The Fifth Circuit looked to the transactions between the manufacturer and the purchaser and held that "[t]he complete vessels were obviously the objects of the [parties'] contract." *Id.* at 928. Although the vessels' steering mechanism had been manufactured independently, the vessel purchaser did not negotiate separately for his ships' component parts. The vessels were each purchased as a whole. Accordingly, the court held that each vessel was the "product" and that the plaintiff could not recover under *East River*.

In *Petroleum Helicopters*, a helicopter owner sued the manufacturer of a floatation device that had been placed inside its helicopter. The plaintiff alleged that its helicopter capsized when the safety floatation device failed to function during an emergency water landing in the Gulf of Mexico. The owner sought damages for the harm to its helicop-

ter. Relying on *Shipco*, the Fifth Circuit affirmed the district court's dismissal of the plaintiff's claims. The court explained that the floatation device was part of the integrated helicopter purchased by the plaintiff. The court found that helicopter was the *East River* product. The floatation device was simply a component part.

Finally, Diesel also relies on *ERA Helicopters, Inc. v. Bell Helicopter Textron, Inc.*, 696 F.Supp. 1096 (E.D.La.1987), in which the court dismissed a helicopter owner's tort claims against the helicopter engine's manufacturer, holding that the engine was a component part of the helicopter. Accordingly, the helicopter itself did not constitute "other property."

These cases, however, are distinguishable from the present case. The plaintiffs in *East River*, *Shipco*, *Petroleum Helicopters*, and *ERA Helicopters* all purchased a single product with integrated parts *from the product's manufacturer*. In each case, the integrated product, purchased as a whole by the initial user, was the object of the parties' contract or bargain. In the present case, Barnacle purchased the allegedly defective engine and the M/V LACABI separately. Barnacle then hired Bollinger to install the engine into its vessel. Diesel nonetheless maintains that since Barnacle contracted with Bollinger to refurbish the entire M/V LACABI, which included installation of the DEPCO engines, the entire vessel must be regarded as the product under *East River*.

Barnacle, however, did not purchase an entire vessel from DEPCO. It purchased two diesel engines. That the engines were installed on the ship does not make the vessel the object of Barnacle's contract with DEPCO. In *Mays Towing Co. v. Universal Machinery Co.*, 755 F.Supp. 830 (S.D.Ill. 1990), the court rejected the argument asserted by the plaintiffs in this case. In *Mays Towing*, a tow boat owner brought a products liability suit against an engine manufacturer and seller when the engine that the plaintiff had installed in its ship malfunctioned, caught fire, and destroyed the entire vessel. The defendants filed a motion for summary judgment asserting that plaintiffs could not claim liability for harm to the tow

boat under *East River*. The court rejected the defendants' motion, since the plaintiff had not contracted with the defendants to build a ship; it had simply purchased an engine. The court further held that simply because the engine was installed on the plaintiff's boat did not make the vessel the object of the parties' contract. *Id.* at 833. The court therefore found that the tow boat was "other property" and that the plaintiff could maintain its product liability suit against the engine manufacturer and seller. *Id.* Similarly, the M/V LACABI did not become the object of Barnacle's contract with DEPCO simply because DEPCO's engines were installed on the vessel. The object of parties' contract was two "Good Runner" engines. The M/V LACABI was a separate product that was purchased through the stream of commerce from a different supplier at a different point in time. Therefore, any damage that those two engines caused to the M/V LACABI is harm to "other property."

Diesel's motion for summary judgment under the economic loss doctrine of *East River* is therefore denied.

## C. CHOICE OF LAW

■ Diesel alternatively argues that the Court should dismiss DEPCO's third-party complaint because as a seller who is not a manufacturer Diesel may not be held liable here under Louisiana products liability law. Diesel argues that while the United States Supreme Court has recognized products liability suits in admiralty, *see East River, supra,* the Court has never articulated which substantive law should be applied to such disputes. It further asserts that the Fifth Circuit has not clarified which law should govern maritime products liability doctrine. Diesel therefore states that this Court should adopt and incorporate the Louisiana Products Liability Law ("LPLA"), La.Rev.Stat. § 9:2800.51, *et seq.,* as federal maritime law.

■ General maritime law is " 'an amalgam of traditional common-law rules, modifications of those rules, and newly created rules,' drawn from both state and federal sources." *Saratoga Fishing,* 117 S.Ct. at 1786, *citing East River,* 476 U.S. at 865. "In developing this law, courts have consulted state law and also the Restatement of Torts." *Vickers v. Chiles Drilling Co.,* 822 F.2d 535, 538 (5th Cir.1987) (citations omitted); *Sullivan v. Rowan Companies,* 736 F.Supp. 722, 725 (E.D.La.1990) (same). Even though maritime suits are governed by federal substantive and procedural law, courts may adopt state law by either express or implied reference when state law does not conflict with federal law. *Palestina v. Fernandez,* 701 F.2d 438, 439 (5th Cir.1983); *Sullivan,* 736 F.Supp. at 725.

The Supreme Court and the Fifth Circuit have applied Section 402A of the Restatement of Torts (Second) to maritime products liability cases. *See Saratoga Fishing,* 117 S.Ct. at 1790; *Vickers,* 822 F.2d at 538 (applying the Restatement (Second) of Torts § 402A to a design defect case); *see also Theriot v. A.S.W. Well Service, Inc.,* No. Civ.A. 89–3687, 1992 WL 349664, *1 (E.D.La. Nov.17, 1992) ("The United States Court of Appeals for the Fifth Circuit has consulted state laws and the Restatement of Torts to provide the proper framework [for maritime products liability law.]"). Diesel nonetheless asks this Court to apply state law that is inconsistent with the Restatement's provisions. In support of its position, Diesel cites *Hebert v. Outboard Marine,* 638 F.Supp. 1166 (E.D.La.1986). In *Hebert,* the plaintiff filed products liability claims against an engine manufacturer when a vessel's engine cover detached during an allision allowing the exposed motor flywheel to injure the plaintiff. Recognizing that the plaintiff's claims were governed by maritime law, the court nonetheless applied the LPLA to the plaintiff's claims "because Louisiana law is congruent with the principles enunciated in Section 402A of the Restatement of Torts (Second)." *Id.* at 1170; *see also Sullivan,* 736 F.Supp. at 725 ("Louisiana law may be applied in this admiralty case because Louisiana law is consistent with the principles enunciated in § 402A of the Restatement (Second) of Torts."). Unlike the situation in *Hebert,* Diesel asks this Court to apply an aspect of Louisiana products liability law that is not compatible with Section 402A of the Restatement. Under the LPLA, the seller of a defective product may be held liable only if

the seller promotes the product as its own, or if the seller exercises control over or influences the characteristics of the product that causes damage. La.Rev.Stat. § 9:2800.53. Under the Restatement of Torts (Second), a seller as well as a manufacturer may be held liable for harm caused by a defective product placed in the stream of commerce. See Restatement (Second) of Torts § 402A.

■ Louisiana's product liability law may be applied to maritime actions when its provisions are consistent with Section 402A of the Restatement (Second) of Torts. However, when state law conflicts with the Restatement, the Court should apply the Restatement's rules. The Fifth Circuit and the majority of circuit courts have applied the Restatement to maritime products liability actions. *See, e.g., Vickers,* 822 F.2d at 538; *Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp.,* 726 F.2d 121, 123 (3d Cir.1984); *Pan–Alaska Fisheries, Inc. v. Marine Constr. & Design Co.,* 565 F.2d 1129, 1134 (9th Cir.1977) (stating that Restatement § 402 is the "best and most widely-accepted expression of the theory of strict liability."); *Lindsay v. McDonnell Douglas Aircraft Corp.,* 460 F.2d 631 (8th Cir.1972); McKee v. Brunswick Corp. 354 F.2d 577, 584 (7th Cir.1965). By applying the provisions of the Restatement, the Court furthers the federal interest in establishing uniform rules of maritime law. *Louisiana Ex. Rel. Guste v. M/V TESTBANK,* 752 F.2d 1019, 1032 (5th Cir.1985) (en banc).

Accordingly, the Court must reject the application of the LPLA to this dispute. The Court therefore cannot say that DEPCO's claims against Diesel should be dismissed as a matter of law. Therefore,

IT IS ORDERED THAT third-party defendant Diesel Specialists, Inc.'s motion for summary judgment is HEREBY DENIED.