**16-690**

ROTORCRAFT LEASING, LLC AND
CATLIN INSURANCE COMPANY, INC.

VERSUS

H.E.R.O.S., INC. ET AL.

**\*\*\*\*\*\*\*\*\***
**APPEAL FROM THE**
**FIFTEENTH JUDICIAL DISTRICT COURT**
**PARISH OF LAFAYETTE, DOCKET NO. 11-15309**
**HONORABLE JULES D. EDWARDS, III, PRESIDING**
**\*\*\*\*\*\*\*\*\***

**SYLVIA R. COOKS**
**JUDGE**

**\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Shannon J. Gremillion and Phyllis Montgomery Keaty, Judges.

**REVERSED, RENDERED, AND REMANDED.**
**Gremillion, J. concurs and assigns written reasons. Keaty, J. concurs for the reasons assigned by Judge Gremillion.**

John R. Walker
Jones Fussell, L.L.P.
P.O. Box 1810
Covington, LA  70434
Tel. (985) 892-4801
Fax: (985) 892-4925
ATTORNEY FOR PLAINTIFFS/APPELLANTS
  Rotorcraft Leasing, LLC and Catlin Insurance Company, Inc.

Kenneth H. Laborde
Brendan P. Doherty
Bradley J. Schwab
Gieger, Laborde & Laperouse, LLC
One Shell Square
701 Poydras Street, Suite 4800
New Orleans, LA  70139
Tel: (504) 561-0400
Fax:  (504) 561-1011
ATTORNEY FOR DEFENDANT/APPELLEE
  Delavan, Inc.

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

The trial court granted summary judgment dismissing Rotorcraft Leasing, LLC (Rotorcraft) and Catlin Insurance Company, Inc.'s (Catlin) suit against H.E.R.O.S., Inc. (HEROS) and Delavan, Inc. (Delavan) for the loss of a 2008 Bell Helicopter, Model 206 L-4, owned by Rotorcraft. The helicopter was forced to make an emergency landing in the Gulf of Mexico on September 14, 2010, after it lost power. The pilot escaped uninjured, but the helicopter sank to the bottom of the gulf. Catlin paid its insured's claim for the loss valued at $2,000,000, less Rotorcraft's deductible of $300,000.

Rotorcraft first sued HEROS on September 9, 2011, alleging its claims present an admiralty and maritime matter under the "savings to suitors" clause of the Judiciary Act of 1789, and asserting it is entitled to relief under the Louisiana Products Liability Act and/or Louisiana's redhibition law. Rotorcraft later amended its suit adding Delavan as a defendant, maintaining Delavan manufactured the fuel nozzle alleged to be defective and alleged to be the cause of the crash. Rotorcraft settled its claims with HEROS and it is no longer a party to the litigation.

Delavan filed a motion for partial summary judgment, motion for summary judgment, and a peremptory exception of prescription asserting: (1) Rotorcraft's products liability claim is barred by the *East River*[1] doctrine under federal maritime

---

[1]  *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295 (1986). "In *East River* the United States Supreme Court held that a plaintiff may not maintain a tort cause of action under admiralty law 'when a defective product, purchased in a commercial transaction malfunctions, injuring only the product itself and causing purely economic loss.' *Id.* at 859."

*Transco Syndicate No. 1, Ltd. v. Bollinger Shipyards, Inc.,* 1 F.Supp.2d 608, 610 (E.D. La.1998).

law; (2) Rotorcraft does not have a cause of action for redhibition because its purchase of the allegedly defective fuel nozzle was not a contract of sale but was, instead, a contract for repair services; and (3) any redhibition claim which Rotorcraft might have for the allegedly defective part is barred by La.Civ.Code art. 3499, ten-year liberative prescriptive period. The trial court granted partial summary judgment dismissing Rotorcraft's products liability claim applying the *East River* doctrine, and granted the motion for summary judgment dismissing Rotorcraft's contract-based redhibition claim. The trial court found it unnecessary to rule on the exception of prescription rendered moot by its summary judgment ruling.

Rotorcraft appeals asserting the trial court erred as a matter of law in granting the motions. It asserts that Louisiana law on redhibition offers an available remedy to Rotorcraft if the fuel nozzle was defective and the cause of the crash. It also asserts the *East River* doctrine does not bar recovery of Rotorcraft's products liability claim because the allegedly defective nozzle did not result only in an economic loss of the defective nozzle itself but of the separate and distinct helicopter. Rotorcraft also asserts it timely filed suit and its claims are not barred by prescription.

## ANALYSIS

We find the trial court erred as a matter of law in granting the motions for summary judgment. Louisiana Code of Civil Procedure Article 966(A)(3) (emphasis added) provides:

> After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the *mover is entitled to judgment as a matter of law.*

2

"'Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate.' *Elliott v. Continental Cas. Co.*, 06–1505, p. 10 (La. 2/22/07), 949 So.2d 1247, 1253 (quoting *Reynolds v. Select Props., Ltd.*, 93–1480 (La. 4/11/94), 634 So.2d 1180, 1183)." *Field v. Lafayette Par. Sch. Bd.*, 16-495 p. 3 (La.App. 3 Cir. 11/9/16), 205 So.3d 986, 988, *writ denied*, 16-2141 (La. 1/13/17), __So.3d __. We find the trial court erred as a matter of law in granting Delavan's motion for summary judgment based on its finding that Rotorcraft's potential products liability claim is barred under the *East River* doctrine. We also find it legally erred in finding Rotorcraft was barred from raising its claim under Louisiana's redhibition law.

**Products liability claim.**

The United States Supreme Court decision in *East River* would only bar Rotorcraft's potential products liability claim if the facts demonstrate that the allegedly defective product caused harm to itself and no other. Such is not the case. Rotorcraft purchased the allegedly defective fuel nozzle separate and distinct from the helicopter which it purchased many years prior. While it is true that the fuel nozzle is a component part of the engine, and the engine is part of the helicopter, it does not necessarily follow, as Delavan asserts, that in this instance we must treat the helicopter as the product rather than the fuel nozzle. The receipt for Rotorcraft's purchase of the fuel nozzle from HEROS dated March 25, 2010, indicates the item was "*sold to*" and *delivered to* Rotorcraft, for *a purchase price* of $1,750 plus a used part. It is elementary that Rotorcraft's purchase of this product is a sale under Louisiana law. *See* La.Civ.Code art. 2439. Rotorcraft

3

alleges this product failed, and its failure caused the helicopter to make a forced landing in the Gulf of Mexico and sink to the bottom of the gulf. The allegedly faulty product caused much damage to "other property," not just damage to itself, and endangered the life of the pilot. The federal courts have clearly recognized that *East River* does not bar recovery in tort for such a loss.

> *East River,* however, did not completely exclude tort claims for economic harm caused by a defective product. *See* Thomas J. Schoenbaum, Admiralty and Maritime Law § 3–11 at 120 (2d ed. 1994) ("[T]he *East River* court did not completely exclude tort product liability claims for purely economic losses."). A plaintiff may maintain a tort cause of action in admiralty when a defective product causes damage to "other property." *East River,* 476 U.S. at 867 ("In this case, there was no damage to 'other' property."); *Saratoga Fishing,* 117 S.Ct. at 1785 ("[A]n admiralty tort plaintiff cannot recover for the physical damage the defective product causes to the 'product itself'; [sic] *but the plaintiff can recover for physical damage the product causes to 'other property.'* "). In order to determine what constitutes "other property," the Court must first define what is the allegedly defective "product." *See Sea–Land Service, Inc. v. General Electric Co.,* 134, F.3d 149, 152 (3d Cir.1998).

*Transco Syndicate No. 1, Ltd. v. Bollinger Shipyards, Inc.*, 1 F.Supp.2d 608, 610–11 (E.D. La.1998) (emphasis added).

In *Transco* the United States District Court for the Eastern District of Louisiana addressed the question of what constitutes "other property" and what defines the "product," relying on the U.S. Supreme Court's holdings in *East River* and *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 117 S.Ct. 1783 (1997):

> Fortunately, the Supreme Court has somewhat clarified *East River's* product—other property dichotomy in *Saratoga Fishing Co. v. J.M. Martinac & Co., supra.* In *Saratoga Fishing,* the initial purchaser of a vessel added a skiff, fishing net, and other equipment to the M/V Saratoga before selling the vessel with this additional equipment to a subsequent purchaser. When a defective hydraulic system in the vessel's engine room failed, the vessel caught fire and the ship sank. The secondary owner then filed suit against the manufacturer of the hydraulic system and the company that built the

4

vessel. The issue presented to the Supreme Court was whether the skiff, fishing net, and other equipment added by the initial purchaser constituted "other property" under *East River*. The Court determined that they did:

> When a Manufacturer places an item in the stream of commerce by selling it to an Initial User, that item is the 'product itself' under *East River*. Items added to the product by the Initial User are therefore 'other property,' and the Initial User's sale of the product to a Subsequent User does not change these characterizations.

*Saratoga Fishing*, 117 S.Ct. at 1786.

*Transco*, 1 F.Supp.2d at 611.

In *Transco*, the owner of a tugboat, the *MV Lacabi*, contracted with Bollinger Shipyard (Bollinger) for repair and refurbishment of its vessel. That contract required that Bollinger install two "Good Runner" diesel engines on the vessel which were purchased by the owner from Diesel Engine & Parts Company (DEPCO). DEPCO bought one of the two engines from Diesel Specialists, Inc. (Diesel). Plaintiffs alleged this engine caused a fire on board the *MV Lacabi* and sued defendants for breach of contract and breach of warranty. DEPCO filed a third-party complaint against Diesel and a cross-claim against Bollinger alleging improper installation, and products liability under Louisiana products liability law. Diesel asserted the *MV Lacabi* was the "product" because the owner had contracted for refurbishment of the vessel which included installation of the allegedly defective engine. The owner maintained that it did not purchase the engine from Bollinger, but in fact purchased it from DEPCO who had purchased the engine from Diesel, and that its vessel constituted "other property" entitling it to recover for damages to the vessel. The federal district court found the claim was not barred by the *East River* doctrine relying on the U.S. Supreme Court's holding in *Saratoga Fishing*:

5

The Court [in *Saratoga Fishing*] therefore **distinguished between components added to a product by a manufacturer before its initial sale**, *see, e.g., East River,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865; *Shipco, Inc. v. Avondale Shipyards, Inc.,* 825 F.2d 925 (5th Cir.1987), **and items added to the product by a subsequent user**, *see, e.g., Saratoga Fishing,* 117 S.Ct. at 1788; *Nicor Supply Ships Assocs. v. General Motors Corp.,* 876 F.2d 501 (5th Cir.1989). *See Sea–Land Service,* 134 F.3d at 153 (noting the Court's distinction).

This distinction is consistent with the "object of the contract test" adopted by the Fifth Circuit prior to *Saratoga Fishing.* In *Shipco Inc. v. Avondale Shipyards, Inc.,* 825 F.2d 925, 928 (5th Cir.1987), the Fifth Circuit stated that "[i]n attempting to identify the product, a court must ask 'what is the object of the contract or bargain that governs the rights of the parties?' ". *Id.* The object of the parties' contract constitutes the "product" under *East River. See also Petroleum Helicopters, Inc. v. Avco Corp.,* 930 F.2d 389, 392 n. 9 ("[T]he phrase 'other property' is construed by looking to the nature of the contract between the parties, and such a determination hence rests upon a contractual interpretation.").

Diesel asserts that the engine that DEPCO provided to Barnacle must be considered a component of the M/V LACABI—the product. Diesel argues that Barnacle contracted with Bollinger to refurbish the M/V LACABI and to install the two used engines Barnacle had purchased from DEPCO. Diesel therefore concludes that the "object" of Barnacle's contract with Bollinger was a completely refurbished and operating M/V LACABI. Diesel therefore asserts that the M/V LACABI is the "product" under *East River* and that plaintiffs should not be allowed to assert claims in tort simply because the vessel's engines were manufactured separately, sold independently, and subsequently installed into the vessel. *Cf. Shipco,* 825 F.2d at 929 ("We see no rational reason to give the buyer greater rights to recover economic losses for a defect in the product because the component is designed, constructed, or furnished by someone other than the final manufacturer."). In support of this argument, Diesel relies on the Fifth Circuit's decision in *Shipco,* 825 F.2d 925, and *Petroleum Helicopters v. Avco Corp.,* 930 F.2d 389 (5th Cir.1991).

In *Shipco,* the Fifth Circuit dismissed a vessel owner's tort claims against a ship manufacturer and a steering system manufacturer for repair costs incurred due to an alleged design defect in the capscrews contained in the vessel's steering mechanism. *Shipco,* 825 F.2d at 926. The plaintiff argued that the damage to a vessel's steering system was "other property," distinct from a defective capscrew. The Fifth Circuit looked to the transactions between the manufacturer and the purchaser and held that "[t]he complete vessels were obviously the objects of the [parties']

contract." *Id.* at 928. Although the vessels' steering mechanism had been manufactured independently, the vessel purchaser did not negotiate separately for his ships' component parts. The vessels were each purchased as a whole. Accordingly, the court held that each vessel was the "product" and that the plaintiff could not recover under *East River.*

In *Petroleum Helicopters,* a helicopter owner sued the manufacturer of a floatation device that had been placed inside its helicopter. The plaintiff alleged that its helicopter capsized when the safety floatation device failed to function during an emergency water landing in the Gulf of Mexico. The owner sought damages for the harm to its helicopter. Relying on *Shipco,* the Fifth Circuit affirmed the district court's dismissal of the plaintiff's claims. The court explained that the floatation device was part of the integrated helicopter purchased by the plaintiff. The court found that [the] helicopter was the *East River* product. The floatation device was simply a component part.

Finally, Diesel also relies on *ERA Helicopters, Inc. v. Bell Helicopter Textron, Inc.,* 696 F.Supp. 1096 (E.D.La.1987), in which the court dismissed a helicopter owner's tort claims against the helicopter engine's manufacturer, holding that the engine was a component part of the helicopter. Accordingly, the helicopter itself did not constitute "other property."

These cases, however, are distinguishable from the present case. The plaintiffs in *East River, Shipco, Petroleum Helicopters,* and *ERA Helicopters all purchased a single product with integrated parts from the product's manufacturer.* In each case, the integrated product, purchased as a whole by the initial user, was the object of the parties' contract or bargain. In the present case, *Barnacle purchased the allegedly defective engine and the M/V LACABI separately.* Barnacle then hired Bollinger to install the engine into its vessel. Diesel nonetheless maintains that since Barnacle contracted with Bollinger to refurbish the entire M/V LACABI, which included installation of the DEPCO engines, the entire vessel must be regarded as the product under *East River.*

Barnacle, however, did not purchase an entire vessel from DEPCO. It purchased two diesel engines. That the engines were installed on the ship does not make the vessel the object of Barnacle's contract with DEPCO. In *Mays Towing Co. v. Universal Machinery Co.,* 755 F.Supp. 830 (S.D.Ill.1990), the court rejected the argument asserted by the plaintiffs in this case. In *Mays Towing,* a tow boat owner brought a products liability suit against an engine manufacturer and seller when the engine that the plaintiff had installed in its ship malfunctioned, caught fire, and destroyed the entire vessel. The defendants filed a motion for summary judgment asserting that

plaintiffs could not claim liability for harm to the tow boat under *East River*. The court rejected the defendants' motion, since the plaintiff had not contracted with the defendants to build a ship; it had simply purchased an engine. The court further held that simply because the engine was installed on the plaintiff's boat did not make the vessel the object of the parties' contract. *Id.* at 833. The court therefore found that the tow boat was "other property" and that the plaintiff could maintain its product liability suit against the engine manufacturer and seller. *Id.* Similarly, the M/V LACABI did not become the object of Barnacle's contract with DEPCO simply because DEPCO's engines were installed on the vessel. The object of [the] parties' contract was two "Good Runner" engines. The M/V LACABI was a separate product that was purchased through the stream of commerce from a different supplier at a different point in time. Therefore, any damage that those two engines caused to the M/V LACABI is harm to "other property."

*Transco*, 1 F.Supp.2d at 611–13(emphasis added).

Likewise, in this case, Defendant, relying on the *East River* doctrine, *Shipco, Sea-land Serv., Inc. v. Gen. Elec. Co.*, 134 F.3d 149 (3ʳᵈ Cir. 1998), and *Petroleum Helicopters*, advances the same arguments rejected in *Transco*. Defendant asserts that Plaintiff's reliance on the holding in *Transco*, as well as the holdings in *Supply Ships*.; *Windward Aviation, Inc. v. Rolls-Royce Corp.,* 2011 WL 2670180 (D. Hawaii 7/6/11)*;* and *Indemnity Ins. Co. of N. America v. American Eurocopter LLC*, 2005 WL 1610653 (M.D.N.C. 7/8/05), is misplaced and that the holdings in those cases are "distinguishable" from this case. The basis for this assertion is that the allegedly defective fuel nozzle in this case was a "replacement" part and is not a "completely new addition" to the helicopter engine. Defendant asserts that because the allegedly defective fuel nozzle bears the same part number as the fuel nozzle first installed in the engine some ten years back in time, it is not a "completely new addition" to the engine. This circuitous reasoning is unavailing. Rotorcraft purchased a newly refurbished fuel nozzle from HEROS manufactured by Delavan. *The object of the contract between Rotorcraft and HEROS is a fuel*

*nozzle, not a helicopter.* The allegedly defective fuel nozzle is the "product" at issue and the helicopter is "other property."

In support of its arguments Delavan traces the life of the allegedly defective fuel nozzle as follows (emphasis added):

> In October of 2000, Rolls-Royce [Corporation] contacted Delavan to purchase twenty-two fuel nozzles to be installed in Rolls-Royce Model 250 helicopter engines. Delavan completed that sale on October 19, 2000 by delivering the full order of fuel nozzles to Rolls-Royce's facility in Indianapolis, Indiana. Included in that shipment was a fuel nozzle bearing serial number 1XR05418 ("the fuel nozzle"), which would ultimately become the subject of Rotorcraft's claims in this case.

> After purchasing the Fuel Nozzle from Delavan, Rolls-Royce installed it in a Rolls-Royce 250-C47B helicopter engine bearing serial number CAE847512 and sold that engine to Bell Textron Canada ("Bell") on November 28, 2000. In connection with the sale of that engine, Bell was provided with a *Rolls-Royce Warranty Card* setting forth all express warranties and waivers of implied warranties pertaining to the engine and its component parts, including the Fuel Nozzle. The Rolls-Royce engine was then installed in a helicopter manufactured by Bell, which was in turn sold to Bell's terminal customer, who was also provided a copy of the Rolls-Royce Warranty Card.

> Over the next nine-plus years, the Fuel Nozzle was placed into service for over 2,000 hours of operation, overhauled on at least two different occasions, installed in an unknown number of engines, transferred between an unknown number of companies, and subjected to unknown abuses and environmental conditions. Eventually, HEROS, Inc. obtained the Fuel Nozzle in a heavily used condition, overhauled it, and transferred it to Rotorcraft . . .

> After receiving the Fuel Nozzle from HEROS, Rotorcraft installed it in the engine of a helicopter bearing FAA Regulation Number N405RL on April 21, 2010. The Fuel Nozzle remained installed in that aircraft for 128 h[ou]rs of operation until its engine was removed for an undisclosed reason on August 10, 2010.

> On August 13, 2010, Rotorcraft installed the Fuel Nozzle in the engine of a Bell 206L-4 helicopter bearing FAA Registration Number N385RL (the "Accident Helicopter"). The aircraft logbook for the Accident Helicopter indicates that the Fuel Nozzle was installed in its engine as a replacement of an identical fuel nozzle bearing the exact same part number (P/N 23077067). After it was installed in the

9

Accident Helicopter, the Fuel Nozzle logged an additional 58.5 hours of operation before its final flight on September 14, 2010.

These facts belie Delavan's assertion that this later installed fuel nozzle must be considered part and parcel of the original aircraft. It clearly was not an original component part of the engine when the helicopter was purchased, but was instead a new and distinct part installed ten years later. Thus Plaintiff's claim under the Louisiana Products Liability Act (LPLA) is not barred by the *East River* doctrine. Under the settled federal decisions LPLA may apply in maritime actions when Louisiana law "does not conflict with federal law." *Palestina v. Fernandez*, 701 F.2d 438, 439 (5th Cir. 1983) and *Transco*. As the court held in *Transco*:

> Louisiana's product liability law may be applied to maritime actions when its provisions are consistent with Section 402A of the Restatement (Second) of Torts. However, when state law conflicts with the Restatement, the Court should apply the Restatement's rules. The Fifth Circuit and the majority of circuit courts have applied the Restatement to maritime products liability actions. *See, e.g., Vickers,* 822 F.2d at 538; *Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp.,* 726 F.2d 121, 123 (3d Cir.1984); *Pan–Alaska Fisheries, Inc. v. Marine Constr. & Design Co.,* 565 F.2d 1129, 1134 (9th Cir.1977) (stating that Restatement § 402 is the "best and most widely-accepted expression of the theory of strict liability."); *Lindsay v. McDonnell Douglas Aircraft Corp.,* 460 F.2d 631 (8th Cir.1972); *McKee v. Brunswick Corp.* 354 F.2d 577, 584 (7th Cir.1965). By applying the provisions of the Restatement, the Court furthers the federal interest in establishing uniform rules of maritime law. *Louisiana Ex. Rel. Guste v. M/V TESTBANK,* 752 F.2d 1019, 1032 (5th Cir.1985) (en banc).

*Transco*, 1 F.Supp.2d at 614.

In *Transco*, the court found the LPLA was in conflict with the Restatement (Second) of Torts Section 402A regarding sellers of defective products. Here, the seller has been released from the litigation and the manufacturer, Delavan, remains. The applicable provisions of the Restatement (Second) of Torts, Sections 395-398 applicable to manufacturers are not in conflict with the LPLA. Both hold

the manufacturer to the same standards of liability. Even if we were to find only the Restatement applies the trial court still erred as a matter of law in granting summary judgment dismissing Rotorcraft's claims.

**Plaintiff's claim in redhibition**.

We find Rotorcraft is entitled to assert a claim against Delavan, the manufacturer of an allegedly defective fuel nozzle, under our state's laws on redhibition found in Book III, Chapter 9 of the Louisiana Civil Code, Article 2520 et seq. The fourth circuit, in *Tucker v. Petroleum Helicopters, Inc*., 08-1019 (La.App. 4th Cir. 3/23/09), 9 So.3d 966, *writ denied*, 09-901 (La. 6/19/09), 10 So.3d 736, rejected the same argument advanced by Defendant in this case, i.e., that because this is a maritime case Plaintiff's claims fall under the ambit of maritime law exclusively, thus, the law on redhibition is not applicable. Our sister circuit rejected this argument relying on the Louisiana Supreme Court decision in *Green v. Industrial Helicopters, Inc., 593 So.2d 634 (La. 1992) and the United States Supreme Court decision in *Romero v. International Term. Operat. Co*., 358 U.S. 354, 79 S.Ct. 468, (1959). In *Tucker* the fourth circuit explained that while this helicopter crash certainly falls within the court's maritime/admiralty jurisdiction, the state courts have concurrent jurisdiction "by virtue of the 'savings to suitors' clause of the Judiciary Act of 1789." [*Green*, 593 So.2d at 637]. *Tucker*, 9 So.3d at 971.

> The *Green* court also explained that while a state may not deprive a person of substantial maritime rights, there are occasions when a state may supplement those rights. *Id.,* at 643. Indeed, a state is allowed "wide scope" in this regard. *Id.* The *Green* decision next describes numerous examples of such state supplementation and concludes that they have been allowed "even, at times, when they conflicted with a rule of maritime law which did not require uniformity, citing *Romero v. International Term. Operat. Co., 358

U.S. 354, 373, 79 S.Ct. 468, 480–481, 3 L.Ed.2d 368 (1959). *Green,* at 643.

> Consequently, we are compelled to find that the [sic] PHI's redhibition claim falls within the ambit of permissible state supplementation of maritime policies as explained in *Green.* Therefore, regardless of whether this is a maritime case, PHI is entitled to assert Louisiana state law claims for implied warranty and redhibition.

> Moreover, we find that maritime law does not exclude PHI's redhibition claim as it is by its very nature *a warranty claim* and is referred to as such throughout the Civil Code articles on redhibition. La. C.C. art. 2520, 2521, 2522, 2530, and 2548.

*Tucker*, 9 So.3d at 971-72.

In *Tucker*, the third-party defendant, Bell Helicopter Textron, Inc. (Bell), just as Delavan does in this case, relied on its interpretation of the decisions in *Petroleum Helicopters, Inc. v. Avco Corportion,* 930 F.2d 389 (5th Cir. 1991) and *East River* as supportive of its "contention that PHI has no claim under maritime law for negligence or strict liability or products liability." *Tucker*, 9 So.3d at 972. For the same reasons the fourth circuit rejected that argument in *Tucker*, we reject Defendant's argument here:

> The statements quoted above in *Petroleum Helicopters, Inc. v. Avco Corporation* from the Supreme Court's *East River* decision form the crux of Bell's legal argument: "[W]hether stated in negligence or strict liability, no products-liability claim lies in admiralty when the only injury claimed is economic loss," and "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." To express it another way, Bell, in effect, argues that PHI has failed to state a claim upon which relief can be granted because it is (1) maritime in nature, (2) a claim for economic loss only and (3) under such circumstances there is no claim for negligence or strict liability or products liability. However, as stated previously, the trial court award to PHI was based on redhibition, a warranty based theory of recovery under La. C.C. art. 2520. The first paragraph of La. C.C. art. 2520 declares that: "the seller **warrants** the buyer against redhibitory defects, or vices, in the thing sold."

12

Therefore, this Court does not see where *East River* or any of its progeny preclude recovery in a Louisiana court for a redhibition claim which is a warranty based claim. In fact, the cases relied upon by Bell take the position that warranty is the proper theory of recovery in such transactions as may be seen by frequent use of the term "warranty" in the language quoted above from *Petroleum Helicopters, Inc. v. Avco Corporation.*

A claim in redhibition has been recognized as being distinctly different from a tort claim. *Patin v. Thoroughbred Power Boats, Inc.,* 294 F.3d 640, 656 (5th Cir.La.2002). It is well established in Louisiana law that a redhibition claim is contractual in nature. *Landry v. Forest River, Inc.,* 06–1424, p. 5 (La.App. 3 Cir. 3/14/07), 953 So.2d 1046, 1050. It arises from a breach of a warranty of a thing sold by a seller. *Id.*

In *Petroleum Helicopters, Inc. v. Avco Corporation,* the court explained how it had applied *East River* in *Shipco 2295, Inc. v. Avondale Shipyards, Inc.,* 825 F.2d 925 (5th Cir.1987), *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1472, 99 L.Ed.2d 701 (1988). In doing so, the court found that in *Shipco* it was determined that "the warranty provisions of the contract between the two parties should govern the dispute." *Petroleum Helicopters, Inc. v. Avco Corporation, supra,* at p. 392. Likewise, in the instant case, the plaintiffs are entitled to pursue their redhibition (warranty) claim in the courts of this State. We find that the following language in *Turbomeca v. Era Helicopters,* 536 F.3d 351 (5th Cir.La.2008), seems to support PHI's redhibition claim which is basically a warranty claim:

> Thus, where a defective product malfunctions and causes damage only to itself, the rule is that a plaintiff can maintain an economic loss claim only under a warranty or contract theory of recovery.

> Later, in *Saratoga Fishing Co. v. J.M. Martinac & Co.,* 520 U.S. 875, 117 S.Ct. 1783, 138 L.Ed.2d 76 (1997), the Supreme Court explained the rationale behind the *East River* rule:

>> The Court [in *East River*] reasoned that the loss of the value of a product that suffers physical harm—say, a product that destroys itself by exploding—is very much like the loss of the value of a product that does not work properly or does not work at all. In all such cases, the Court held, "contract law, and the law of warranty in particular, is well suited" to setting the responsibilities of a

13

> > seller of a product that fails to perform the
> > function for which it was intended.
>
> *Id.* at 879–80, 106 S.Ct. 2295 (citations omitted).
>
> > The Court instructed that "[g]iven the availability of
> > warranties, the courts should not ask tort law to perform a
> > job that contract law might perform better." *Id.* at 880,
> > 106 S.Ct. 2295.
>
> *Id.,* at pp. 354–355.
>
> > The judgment by the trial court was based on warranty, that is,
> > the warranty of Louisiana's law of redhibition. And, there is no proof
> > in the record that PHI waived that warranty.

*Tucker*, 9 So.3d at 972–74.

Likewise, in this case, Defendant makes the same three-pronged argument which we also find unavailing based on the same rationale articulated by the fourth circuit in *Tucker*. This case does not present a claim for "economic loss only," as Defendant argues. As we have determined, the allegedly defective fuel nozzle is the "product" that is the object of the sale between Rotorcraft and HEROS. The sunken helicopter is "other property" destroyed as a result of the allegedly defective fuel nozzle. Although this event happened over the Gulf of Mexico and is subject to maritime law the holding in *East River* does not bar application of Louisiana's redhibition law. And, here, as in *Tucker*, there is no evidence of a waiver of warranty in the sale of the fuel nozzle from HEROS to Rotorcraft.

**No waiver of warranty.**

The facts articulated by Delavan also demonstrate why Delavan's warranty argument fails. The burden is on Delavan to prove a waiver of warranty affecting the fuel nozzle that was the subject of the sale between HEROS and Rotorcraft:

> The burden is on Bell to establish the existence of an applicable
> and valid warranty waiver. *Berney v. Rountree Olds-Cadillac Co.,
> Inc.,* 33,388 (La.App. 2 Cir. 6/21/00), 763 So.2d 799; *Moses v.*

14

> *Walker*, 98–58, p. 3 (La.App. 3 Cir. 6/17/98); 715 So.2d 596, 598. . .
> In order to bear its burden that the alleged waiver of warranty was
> effective, Bell must prove that the waiver was: (1) written in clear and
> unambiguous language; (2) contained in the contract; and (3) either
> brought to the attention of the buyer or explained to him. *Boos v.
> Benson Jeep–Eagle Co., Inc.*, 98–1424 (La.App. 4 Cir. 6/24/98), 717
> So.2d 661.

*Tucker*, 9 So.3d at 970.

We find Delavan fails to meet its burden to prove there was any waiver of warranty by Rotorcraft when it purchased the allegedly defective fuel nozzle from HEROS. Delavan relies on a warranty card with a waiver of warranty presented by Rolls-Royce in 2000, when it sold its engine to Bell Helicopters. It is noteworthy that neither Rotorcraft, HEROS, nor Delavan was a party to that transaction. Perhaps recognizing that fact, Delavan attempts to treat the allegedly defective fuel nozzle purchased by Rotorcraft from HEROS in 2010, as the same fuel nozzle that Delavan sold to Rolls-Royce in 2000, which Rolls-Royce installed as a component part of the engine. But this is not the case. We are clearly dealing with two distinctly different fuel nozzles, i.e., one originally installed by Rolls-Royce in the engine it sold to Bell, and a different fuel nozzle sold by HEROS to Rotorcraft and then installed in the engine of the downed helicopter.

Defendant says the warranty card containing a waiver of warranty was issued by Rolls-Royce to Bell in 2000. It further states that Bell issued the warranty card to its customer when it purchased the helicopter with the original engine containing the original fuel nozzle replaced by the allegedly defective nozzle. The only party such a waiver of warranty could protect is *Rolls-Royce*. The waiver of warranty issued by Rolls-Royce does not, and cannot, shield Delavan as the manufacturer of an allegedly defective product from liability,

15

particularly as concerns a fuel nozzle that was the object of a sale between Rotorcraft and HEROS.

In *Tucker* the fourth circuit addressed a similar argument that a warranty waiver in the original purchase of a helicopter by PHI from Bell in 1990 and the subsequent purchase of allegedly defective replacement parts in 2000, were both covered by the express waivers of warranty brought to PHI's attention in the 1990 purchase. Bell argued unsuccessfully that the original waiver of warranty precluded any claims by the plaintiffs for redhibition. The warranty at issue in *Tucker* read as follows:

> The original 1990 purchase agreement for the helicopter contained the following warranty provision:
>
> **THIS WARRANTY IS GIVEN AND ACCEPTED IN PLACE OF (i) ALL OTHER WARRANTIES OR CONDITIONS, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE AND (ii) ANY OBLIGATION, LIABILITY, RIGHT CLAIM OR REMEDY IN CONTRACT OR IN DELICT/TORT, INCLUDING PRODUCT LIABILITIES BASED UPON STRICT LIABILITY OR NEGLIGENCE, ACTUAL OR IMPUTED.**
>
> This warranty is the only warranty made by Seller. The remedies of Purchaser and obligations and Seller are limited to the repair or replacement of helicopter parts as provided herein. Seller excludes liability, whether as a result of a breach of contract or warranty, negligence, or strict product liability, for incidental or consequential damages, including without limitation, damage to the helicopter or other property, costs and expenses resulting from required changes or modifications to helicopter components and assemblies, changes in retirement lives and overhaul periods, and costs or expenses for commercial losses or lost profits due to loss of use or grounding of helicopter or otherwise.

*Tucker*, 9 So.3d at 969.

The purported waiver of warranty card relied upon by Delavan in this case contains very similar language. We note first, in *Tucker*, at least the parties in the

16

original sale and subsequent sale were the same, but even then, defendants' argument was unavailing. Here, the parties to the original sale ten years earlier are not at all the same as the two parties in the sale of the allegedly defective nozzle. The warranty card intended to affect the original fuel nozzle incorporated into the original engine as a component part by Rolls-Royce, and intended to cover the sale of the engine to be placed in a helicopter and the sale of the helicopter to the end user, has no effect on the sale and purchase of a separate and distinct fuel nozzle purchased by Rotorcraft from HEROS and manufactured by Delavan. As we have already determined, the newly purchased fuel nozzle is a *separate and distinct part* purchased by Rotorcraft from HEROS in 2010. Delavan, much like the defendants in *Tucker*, asserts that the waiver contained in the warranty card provided with the original sale of fuel nozzles by Delavan to Rolls-Royce is "broad enough to encompass the subsequent purchase of replacement component parts" such as the separate and distinct fuel nozzle purchased by Rotorcraft from HEROS. The court in *Tucker* rejected that argument despite the fact that in *Tucker* the parties were the same:

> We disagree with this argument for both legal and public policy reasons, i.e., we find that a waiver of redhibition is ineffective as to indefinite purchases in the indefinite future. La.C.C. art. 2548 requires in pertinent part that:
>
>> The terms of the exclusion or limitation must be clear and unambiguous and must be brought to the attention of the buyer.
>
> We find that this language requiring that the waiver be brought to the attention of the buyer necessarily implies that it *must be brought to the attention of the buyer in connection with the purchase that is under attack for redhibition.* It is not sufficient to bring it to the attention of the buyer in connection with some purchase in the past. In this case, the helicopter was originally purchased by PHI from Bell on March 30, 1990, more than 10 years prior to the purchase of certain replacement parts in 2000 that allegedly resulted in the loss of the

17

helicopter on August 19, 2004. Calling this provision to the attention of PHI in 1990 does nothing to satisfy the requirement of calling it to the attention of PHI in 2000 when PHI purchased the replacement parts in 2000.

*Tucker*, 9 So.3d at 970.

HEROS did not present such a waiver of warranty to Rotorcraft accompanying the purchase of the allegedly defective fuel nozzle. Rolls-Royce and Delavan were nowhere in the picture when Rotorcraft purchased the allegedly defective fuel nozzle to be installed in its helicopter's engine. Moreover, when Delavan sold the original fuel nozzles to Rolls-Royce its sale was accompanied by an invoice and purchase order, both of which *contained express warranties*, not any waiver of warranty. The invoice for the sale of fuel nozzles by Delavan to Rolls-Royce includes the following language:

> This is to certify that all materials as identified hereon comply, to the best of our knowledge and belief, with the specified requirements. Certificate of functional test and inspection are on file to attest compliance with the specifications for all material used in these parts. If material, parts or assemblies do not entirely conform to specification requirements, the deviations and authority for furnishing such material are indicated above.

In the purchase order for the sale by Delavan to Rolls-Royce the following language appears:

> Seller expressly warrants that all goods or services covered by this Order will conform to the specifications, drawings, samples or descriptions furnished to or by Buyer and will be merchantable, all good material and workmanship and free from defect. In addition, Seller acknowledges that Seller knows of Buyer's intended use and expressly warrants that the goods covered by this Order have been selected, manufactured or assembled by Seller, based upon Buyer's stated use, will be for and sufficient for the particular purpose intended by Buyer.

Thus, Delavan expressly warranted its product in the original sale of fuel nozzles to Rolls-Royce. Any waiver of warranty card issued by Rolls-Royce to

18

Bell has no bearing on the manufacturer's warranty of its product, and certainly does not affect Rotorcraft's rights in Louisiana under the LPLA and/or Louisiana's redhibition laws.

For these reasons we reject Defendant's waiver of warranty argument and find there was no evidence presented as to any waiver of warranty that would preclude Rotorcraft from bringing its claims against Delavan.

**Plaintiff's claims are not prescribed.**

The issue of prescription was raised in the trial court but not ruled upon because the trial court found the issue moot. Because we reverse the trial court's ruling the issue of prescription is no longer moot. Prescription may be raised at any stage of the proceeding in the trial court. La.Code Civ.P. art. 928(B). Defendant has raised the issue of prescription again in this court in its appellate brief and Plaintiff has responded. Defendant maintains the absolute longest prescriptive period is ten years from the date of the original sale of the allegedly defective fuel nozzle by Delavan to Rolls-Royce for incorporation into a helicopter engine. Delavan argues that because the allegedly defective fuel nozzle purchased in 2010 is a replacement for the original fuel nozzle installed in the helicopter engine in 2000, it should be treated as the same component part of the original engine and thus subject to prescription commencing in 2000. We have rejected this argument entirely in deciding both the issue of the application of the *East River* Doctrine and Defendant's waiver of warranty argument. As we have explained herein, the product at issue is a fuel nozzle purchased in 2010, by Rotorcraft from HEROS and manufactured by Delavan. The Louisiana products liability claim and the action in redhibition are subject to one-year liberative prescription. Suit was filed within one year of the date of the helicopter's forced

landing, the earliest possible date on which Rotorcraft could conceivably have learned the part was defective or that it suffered damage as a result of the allegedly defective product. Plaintiff's claims, therefore, are not prescribed. Defendant has the burden to prove its affirmative defense of prescription. It has failed to do so.

**Conclusion**

For these reasons we reverse the trial court's judgment and additionally find Plaintiff's claims are not prescribed. We remand the case for further proceedings. All costs of this appeal are assessed against Delavan.

**REVERSED, RENDERED, AND REMANDED.**

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


16-690


ROTORCRAFT LEASING, LLC AND
CATLIN INSURANCE COMPANY, INC.

VERSUS

H.E.R.O.S., INC., ET AL.


**GREMILLION, Judge, concurring.**

I agree with the majority's finding that the trial court erroneously granted summary judgment dismissing Rotorcraft and Catlin's suit against H.E.R.O.S. and Delavan. While I agree with the majority's reasoning relating to Delavan's arguments in assignments of error one and three, I find its reasoning fails as to assignment of error two.

Delavan's most compelling argument is that this is not a claim for redhibition because it was not a contract of sale, but rather a contract for repair services. The majority however asserts that Delavan's argument is that "because this is a maritime case plaintiff's claims fall under the ambit of maritime law exclusively, and thus, the law on redhibition is not applicable." This is simply an incorrect characterization of the defendant's argument in its second assignment of error.

Furthermore, the issue of whether the transaction between Rotorcraft and Delavan was a sale, i.e., purchase of a product, versus a contract of repair is a factual determination that is not appropriate for determination on summary judgment when conflicting evidence has been presented by the parties. The majority has concluded that this was a sale as it states, "As we have determined,

the allegedly defective fuel nozzle is the 'product' that is the object of the sale between Rotorcraft and HEROS." I must concur because I cannot arrive at the same conclusion. In my opinion, a genuine issue exists as to whether it is a sale.

This factual determination is properly left with the trier of fact. Delavan has failed to show there are no genuine issues of fact relating to the nature of the transaction between it and Rotorcraft. While a document showing an itemized amount of $1,750.00 for a "refurbished fuel nozzle" was submitted into evidence, so too was the deposition testimony of Rotorcraft's own corporate representative who stated, "You're paying for the overhaul. You're not paying for the new purchase of that article." Whether a sale occurred is a material fact that precludes summary judgment. Accordingly, I concur with the result reached by the majority in finding that summary judgment was not appropriate.